FLOYD DOUGLAS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Douglas v. Commissioner
Docket No. 7652-77.
United States Tax Court
T.C. Memo 1980-66; 1980 Tax Ct. Memo LEXIS 520; 39 T.C.M. (CCH) 1190; T.C.M. (RIA) 80066; March 6, 1980, Filed *520 Held: Respondent's deficiency determination sustained. Held further: Respondent's determination of additions to tax under secs. 6651(a)(1) and 6653(a) sustained. Floyd Douglas, pro se. Donald W. Mosser, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income taxes against petitioner and additions to tax under sections 6651(a)(1) [1] (failure to file return) and 6653(a) (negligence) as follows: Additions to Tax
Year
Deficiency
6651(a)(1)
6653(a)
1973
$ 999.13 [2]
$249.78
$ 49.96
1974
2,380.52 [2]
595.13
119.03
The issues for our decision are as follows: (1) Whether respondent erred in determining the deficiencies asserted herein; and (2) Whether petitioner is liable for the additions to tax under sections 6651(a)(1) and 6653(a) asserted herein. FINDINGS OF FACT Some of the facts have been *521 stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. [3]
When the petition in this case was filed, petitioner resided in Fredericktown, Ohio. During 1973 and 1974, petitioner owned and operated a dairy farm near Fredericktown, Ohio. Petitioner purchased the farm of approximately 140 acres in January of 1972. A mortgage on the farm for $63,000 was filed at the time of purchase. Petitioner sent to respondent's Covington, Kentucky, office a 15-page document as his purported 1973 Federal income tax return. The first two pages of the document are a printed Form 1040 for 1973 signed by petitioner and Jacqueline C Douglas, his wife (hereinafter sometimes referred to as "Jacqueline"), and dated April 11, 1974. This form shows petitioner's name, address, and county of residence, occupations of petitioner and Jacqueline (farmer and housewife, respectively), filing status (married filing separately), and exemptions (for self, spouse, and five children). The notation "Object 5th Amendment" appears on line 11 (interest income), line 12 (income other than wages, *522 dividends, and interest), line 28 (business income or (loss)), and line 44 (adjusted gross income). The box identified as "Foreign Accounts" on page 2 of the Form 1040 is checked "No" and the notation "Object 5th Amendment" made. On line 10a (dividends), the notation "over $.50"" appears. On various of the other lines, the word "None" appears. The remaining pages of the document consist of copies of newspaper and newsletter articles, copies of court decisions and correspondence, and copies of excerpts from books, many of which items are referred to in marginal notations on the Form 1040. On May 3, 1974, a form letter was mailed to petitioner from the Director of the Internal Revenue Service Center at Covington, Kentucky, advising petitioner that the document filed for 1973 was not acceptable as an income tax return. The form letter also quotes from United States v. Porth,426 F.2d 519, 523 (CA10 1970), and states as follows: This is your notice of the legal requirements for filing Federal income tax returns. Failure to file a required return may subject you to prosecution under Internal Revenue Code section 7203, as shown on the back of this letter. On the back of the letter *523 is the text of sections 6011(a), 6012(a)(1), and 7203, as in effect for 1973. [4]
After being visited by two revenue agents on September 18, 1974, petitioner sent to respondent's Covington, Kentucky, office a 119-page document which contains the heading "Revised Filing of 1973 Report, dated 4-11-74". The first two pages of the document are a printed Form 1040 for 1973 signed by petitioner and dated September 18, 1974. Jacqueline's name is printed on the "Spouse's signature" line. The notations made on the Form 1040 as revised are the same as on the document dated April 11, 1974, except that (1) no filing status is indicated, (2) the notation "Object 5th Amendment" does not appear in the "Foreign Accounts" box, (3) there is no notation made on line 10a (dividends), and (4) there are no marginal notations. The remaining 117 pages of the document consist of copies of various excerpts from the United States Constitution and Congressional Record, copies of statutes and court decisions, and copies of *524 newspaper, magazine, and newsletter articles. Petitioner filed a 48-page document as his purported Federal individual income tax return for 1974. The first two pages of the document are a printed Form 1040 for 1974 which contains the heading "Amended", which is signed by petitioner and dated March 15, 1976, and which has the notation "Not for Identification" in the space provided for social security number. This form shows petitioner's name, address, county of residence, occupation, filing status (married filing separately), and exemptions (for self, spouse, and four children). Line 9 (wages, salaries, tips, and other employee compensation) contains the notation "Not over 21" with an explanation that the "21" "is expressed in Constitutional Dollars of silver and/or gold." Line 10a (dividends) contains the notation "Not over $400.00". Most of the other lines on the form are specifically objected to "on grounds of the 1st., 4th., 5th., 7th., 8th., 9th., 10th., 13th., 14th., and 16th., Amendments as to Federal Reserve Notes." The remaining 46 pages of the document are materials similar to those filed for 1973. No part of the above-described three documents filed by petitioner reflects *525 any information from which petitioner's income tax liability for either 1973 or 1974 could be computed. In the notice of deficiency, respondent determined that petitioner's income included net profit from farming for the years 1973 and 1974 in the amounts shown in table 1: Table 1 1973
1974
Gross receipts: Milk sales
$ 35,603.06
$ 37,806.73
Sale of raised calves
2,200.00
2,200.00
Oil and gas lease
140.00
140.00
Federal gas tax credit
73.80
0
Grain sales
2,000.00
2,000.00
Total gross receipts
$ 40,016.86
$ 42,146.73
Less farm production
expenses: 40,016.86 X 71.6%
(28,652.07)
42,146.73 X 71.6%
(30,177.06)
Net profit from farming
$ 11,364.79
$ 11,969.67
During 1973 and 1974, petitioner sold milk to the Meadow Gold Dairy, Zanesville, Ohio (hereinafter referred to as "Dairy"). The milk was sold to Dairy through the National Farmers Organization (hereinafter referred to as "NFO"). Dairy maintains a record of the pounds of milk sold to it by the individual producers through NFO, but does not maintain records as to the price or payments with respect to each producer. Dairy pays NFO a lump sum amount for all of the milk purchased through NFO, and then NFO distributes the funds to the individual producers. During 1973 *526 and 1974, petitioner sold 478,047 and 439,812 pounds of milk, respectively, to Dairy. To determine petitioner's gross receipts from milk sales for 1973 and 1974 (as set forth in table 1, supra), respondent multiplied each month's sales by the average price received by Ohio farmers for fluid market milk for that month, as shown in United States Department of Agriculture publications. On Schedule F (Farm Income and Expenses) of petitioner's 1972 Federal individual income tax return, petitioner reported gross profit of $28,187 from the sale of dairy products. The records of Knox County, Ohio, contained the following information in September 1974 with respect to three financing statements of petitioner to the First National Bank of Orrville, Ohio: (a) Statement filed on September 18, 1972, and terminated on September 4, 1973, for 35 milk cows and 14 heifers. (b) Statement filed on September 4, 1973, and terminated on January 24, 1974, for 40 head of dairy cows. (c) Statement filed on January 30, 1974, and still outstanding in September 1974, for 40 head of dairy cows. Respondent determined that petitioner received $2,200 from the sale of raised calves (table 1, supra) in each of *527 the years before the Court, by estimating that petitioner sold 40 calves in each of the years at $55 per head. On Schedule F of petitioner's 1972 Federal individual income tax return, petitioner reported a gross profit of $1,205 from the sale of hogs and a gross profit of $100 from the sale of calves. On Form 4797 (Supplemental Schedule of Gains and Losses) filed with that return, petitioner reported a net gain of $1,880.25 from the sale of dairy cattle and sheep. The records of Knox County, Ohio, as of September 1974, reflect the recording of an oil and gas lease on June 19, 1972, from petitioner to Liberty Petroleum, Toledo, Ohio, for $35 every three months and the assignment of this lease to The East Ohio Gas Company, Cleveland, Ohio, on August 24, 1972. Based on this information, respondent determined (table 1, supra) that petitioner received $140 in 1973 and $140 in 1974 from an oil and gas lease. Based on a Federal gas tax credit claimed by petitioner on his 1972 Federal individual income tax return in the amount of $73.60, respondent determined that this amount constituted income in 1973 (table 1, supra). On Schedule F of petitioner's 1972 Federal individual income tax *528 return, petitioner reported a gross profit of $3,952 from the sale of grain. Based on this information, respondent determined that petitioner received $2,000 in 1973 and $2,000 in 1974 from the sale of grain (table 1, supra). Respondent determined that petitioner's farm production expenditures were 71.6 percent of the gross receipts that he had determined (table 1, supra). This was based on "1972 Ohio Farm Income", a publication of the Ohio Agricultural Research and Development Center, Wooster, Ohio, which stated (table III, p. 8) that farm production expenses of Ohio farm operators amounted to 71.6 percent of their gross farm income in 1972. A subsequent issue, "1977 Ohio Farm Income", stated (table IV, p. 7) that farm production expenses of Ohio farm operators amounted to 72.2 percent and 76.3 percent of their gross farm income in 1973 and 1974, respectively. Based on petitioner's 1972 Federal individual income tax return, respondent determined that petitioner was entitled to an investment credit carryover from 1972 to 1973 in the amount of $1,148.57. Respondent determined that petitioner was liable for self-employment tax of $864 and $945.60 for 1973 and 1974, respectively, *529 based on respondent's determinations of net profit from farming (table 1, supra). Respondent determined that petitioner was entitled to deductions for five personal exemptions for each of the years before the Court. OPINION 1. Deficiency in Income Tax
Apart from the stipulations referred to in our findings, petitioner presented no evidence. Instead, he relies on a number of constitutional arguments and objects to respondent's use of statistics in preparing the notice of deficiency. [5] We see no merit to petitioner's arguments and objections. Petitioner has the burden of proving error in respondent's determination of taxable *530 income. Welch v. Helvering,290 U.S. 111 (1933), Rule 142(a), Tax Court Rules of Practice and Procedure. Such evidence as was stipulated tends to support respondent's determinations; none of it contradicts respondent's determinations. Petitioner has failed to sustain his burden of proof. Estate of Mason v. Commissioner,64 T.C. 651 (1975), affd. 566 F.2d 2 (CA6 1977); Jones v. Commissioner,29 T.C. 601, 613-614 (1957). At trial, petitioner refused to testify or to produce books and records and failed to present any witnesses, expressing the concern that testifying or producing books and records would constitute a waiver of his right against self-incrimination under the Fifth Amendment to the United States Constitution. [6] Respondent's attorney assured petitioner in open court that at the time of the trial there was no pending criminal action based on the returns for 1973 or 1974, that no criminal action was contemplated at the time of the trial, and that criminal action had not been contemplated prior to the time of the trial. Petitioner offered no evidence to the contrary. Nothing in the record in this case warrants us in concluding that any foundation exists for a claim of *531 such a right. See Rockwell v. Commissioner,512 F.2d 882, 887 (CA9 1975), affg. a Memorandum Opinion of this Court; [7]Figueiredo v. Commissioner,54 T.C. 1508, 1512 (1970), affd. 73-2 USTC par. 9713 (CA9 1973). See also Hartman v. Commissioner,65 T.C. 542, 547 (1975); Roberts v. Commissioner,62 T.C. 834, 838 (1974). Petitioner offered to present his books and records if granted immunity from criminal prosecution and on brief asks the Court to order respondent to grant immunity to petitioner. We see no basis for doing so. Hartman v. Commissioner,65 T.C. at 547. Petitioner objects *532 to respondent's use of statistical evidence in the estimation of farm expenses (see table 1, supra). In light of petitioner's refusal to furnish records or any other information, respondent's estimates in the instant case are an acceptable basis for a determination. Giddio v. Commissioner,54 T.C. 1530 (1970). See Webb v. Commissioner,394 F.2d 366 (CA5 1968), affg. a Memorandum Opinion of this Court. [8] Respondent has great latitude in making determinations of liability, particularly when the taxpayer files no returns and refuses to cooperate in the ascertainment of his income. Webb v. Commissioner,394 F.2d at 371-372; Hallabrin v. Commissioner,325 F.2d 298, 301 (CA6 1963), affg. a Memorandum Opinion of this Court; [9]Giddio v. Commissioner,54 T.C. at 1533. When the taxpayer has defaulted in his task of supplying adequate records, he is not in a position to be hypercritical of respondent's labors. Webb v. Commissioner, 394 F.2d at 372-373, 377; Figueiredo v. Commissioner,54 T.C. at 1513. Since petitioner failed to show the determined deficiencies were excessive and without foundation, the burden of proof remains with him. Webb v. Commissioner, 394 F.2d at 372-373; Hallabrin v. Commissioner, 325 F.2d at 304, 305; *533 Burgo v. Commissioner, 69 T.C. 729, 749 (1978); Figueiredo v. Commissioner, 54 T.C. at 1513. Cf. Helvering v. Taylor, 293 U.S. 507 (1935); Jackson v. Commissioner, 73 T.C.     (Nov. 28, 1979). We conclude that respondent's use of statistical tables as the basis for some of his determinations herein is appropriate. The question remains as to whether, on this record, petitioner should be allowed greater deductions for farm production expenses. In analyzing respondent's determinations as to deductible farm production expenses, we note the following in support of petitioner: (1) subsequent issues of the pamphlet relied on by respondent have revised upward the 71.6-percent figure reported for 1972 in the 1972 pamphlet; (2) the most recent pamphlet introduced ino evidence (the 1977 issue) reported that the relevant figures for 1973 and 197 were 72.2 percent and 76.3 percent, respectively; and (3) since the farm income figures used by the pamphlet include significant amounts of nontaxable items (such as gross rental value of farm dwellings), it is likely that a focus on tax-includible and tax-deductible items would result in percentages higher *534 than those set forth in the pamphlets. In support of respondent, we note that: (1) the stated percentages are averages, presumably many farmers had lesser expenses than the averages; and (2) petitioner has declined to present to respondent or to this Court any evidence that petitioner's expenses were greater than the amount determined by respondent. Petitioner has the burden of proving that his deductions are greater than the amount determined by respondent. In Cohan v. Commissioner, 39 F.2d 540 (CA2 1930), it was held that when the Court was convinced that some expenses were paid or incurred, then some amount should be allowed even though the taxpayer has not shown the precise amount that should be allowed. In the instant case, it is obvious that petitioner incurred substantial expenses in his farming business. However, respondent has determined that substantial deductions should be allowed. Petitioner has not shown that he should be entitled to any greater deductions than those already allowed by respondent.
No evidence was presented as to deductions for personal exemptions. On the income taxes we hold for respondent. 2. Additions to Tax
Petitioner has the burden of proving *535 error in respondent's determination that additions to tax should be imposed under section 6651(a)(1) [10] ( Ehrlich v. Commissioner, 31 T.C. 536, 540 (1958)) and section 6653(a) [11] *536 ( Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972)). Under settled law, the documents sent to respondent by petitioner, documents from which petitioner's income tax liability cannot be computed, are not income tax returns for purposes of section 6651(a)(1). Hatfield v. Commissioner, 68 T.C. 895, 898 (1977); Cupp v. Commissioner, 65 T.C. 68, 78-80 (1975), affd. without published opinion 559 F.2d 1207 (CA3 1977). See Commissioner v. Lane-Wells Co., 321 U.S. 219, 222-224 (1944); United States v. Daly, 481 F.2d 28, 29-30 (CA8 1973); United States v. Porth, 426 F.2d 519, 523 (CA10 1970). Petitioner contends that the additions to tax which respondent asserts are an effort to penalize the petitioner for exercise of his Fifth Amendment rights. This argument is without merit; efforts to vindicate asserted constitutional rights do not automatically excuse failures to satisfy one's legal obligations. See in particular United States v. Daly, 481 F.2d at 30. The requirement to file tax returns does not violate a taxpayer's privilege against self-incrimination under *537 the Fifth Amendment. White v. Commissioner, 72 T.C. 1126, 1130 (1979), and cases cited therein. Petitioner has failed to introduce any evidence indicating that respondent erred in determining that additions to tax should be imposed under sections 6651(a)(1) and 6653(a). We conclude that sections 6651(a)(1) and 6653(a) apply. In accordance with the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
2. Of these amounts, $864 and $945.60 are asserted deficiencies in self-employment tax for 1973 and 1974, respectively; the remainders are asserted deficiencies in chapter 1 tax.↩
3. The stipulations are set forth or described in the Court's order of November 8, 1978.↩
4. The text set forth for section 7203↩ includes an erroneous reference to section 6016, but that relates only to estimated income taxes of corporations and does not affect the instant case.
5. Petitioner does not specifically object to respondent's determinations as to self-employment tax. We take it that the arguments raised by petitioner as to the chapter 1 tax are intended to apply also to the self-employment tax. Neither in the pleadings nor on brief does petitioner refer to the "Constitutional Dollar" or Federal Reserve Note argument noted on the Form 1040's he filed. We assume that this point has been abandoned; in any event, by now we regard it as frivolous, e.g. Hatfield v. Commissioner,68 T.C. 895, 897↩ (1977), and cases cited therein.
6. No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. ↩
7. T.C. Memo. 1972-133↩.
8. T.C. Memo. 1966-81↩. 9. T.C. Memo. 1962-30↩.
10. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; ↩
11. SEC 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A * * * (relating to income taxes * * *) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.