ALBERT R. MONI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moni v. Commissioner
Docket No. 9703-77.
United States Tax Court
T.C. Memo 1981-110; 1981 Tax Ct. Memo LEXIS 636; 41 T.C.M. (CCH) 1070; T.C.M. (RIA) 81110; March 9, 1981. Albert R. Moni, pro se. Alan Summers, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and General Order No. 6 of this Court, 69 T.C. XV (1976). [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth *637 below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: In the notice of deficiencies, respondent determined deficiencies in petitioner's federal income taxes and additions thereto as follows: Taxable year
Additions to tax under
ended
Deficiency
Sec. 6651 (a) [2]
Sec. 6653(a)
Dec. 31, 1970
$ 1,448
$ 362
$ 72
Dec. 31, 1971
$ 1,069
$ 268
$ 54
Dec. 31, 1972
$ 1,118
$ 280
$ 56
Dec. 31, 1973
$ 1,245
$ 312
$ 62
At trial, respondent conceded a portion of the asserted deficiencies and additions to taxes (due to a mathematical error in his earlier computations) and now asserts the following: Taxable year
Additions to tax under
ended
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Dec. 31, 1970
$ 1,425.47
$ 356.39
$ 71.25
Dec. 31, 1971
$ 1,056.50
$ 264.15
$ 52.80
Dec. 31, 1972
$ 1,087.24
$ 271.82
$ 54.35
Dec. 31, 1973
$ 1,220.45
$ 305.04
$ 61.10
*638 The questions presented for decision are: (1) Whether respondent's determination that petitioner realized and must recognize in 1970 a net long-term capital gain of $ 2,047.50, representing his community property share of gain on the sale of a sheep ranch, should be upheld, (2) whether respondent's reconstruction of the net income derived by petitioner from his riding, boarding, and training stable business for each of the years 1970, 1971, 1972, and 1973 should be upheld, (3) whether petitioner is entitled under section 165 to a loss deduction for 1973, (4) whether petitioner's failure timely to file a federal income tax return for each of the years 1970, 1971, 1972, and 1973 was due to his willful neglect and not due to reasonable cause within the meaning of section 6651(a), and (5) whether any part of petitioner's underpayment of tax for each of the years 1970, 1971, 1972, and 1973, if such underpayment exists, was due to his negligence or intentional disregard of rules and regulations (but without intent to defraud) within the meaning of section 6653(a) FINDINGS OF FACT Some of the facts have been stipulated and they are so found. The stipulation of facts and exhibit attached *639 thereto are incorporated herein by this reference. Petitioner resided at Stockton, California, at the time he filed his petition in this case. At all times relevant hereto, he resided in the State of California. No federal income tax return was filed by petitioner or on his behalf for any of the years 1970, 1971, 1972, or 1973. During the years at issue, petitioner, as a sole proprietor, operated a horse ranch in Stockton. His stable operation produced some gross income, including fees for boarding horses, for rental of horses, for riding lessons, and from the sale of horses. Ten horses were maintained at the horse ranch for petitioner's personal use and an average of approximately 30 horses were at the ranch at any one time. Petitioner resided in a mobile home which was purchased around 1963. The mobile home was situated on a one-acre tract which petitioner contracted to purchase in 1960. Crops, including hay and wheat, were raised on this tract for use in petitioner's stable operations. Various pieces of farm equipment and several buildings were also located on the property. During the years at issue, petitioner made payments of $ 150 a month on a first deed of *640 trust on his land, $ 150 a month on the mobile home, and approximately $ 200 a month for food, clothing, utilities and other necessities. In 1965, petitioner realized a long-term capital gain in the amount of $ 11,060 upon a sales price of $ 56,250 from the sale of a sheep ranch, which gain he elected to report on the installment basis. As part of the transaction, the purchaser assumed an existing mortgage on the property, which mortgage was then in an indeterminate amount. From 1965 to 1969, a total of $ 2,870 of the gain realized upon the sale of the sheep ranch was reported by petitioner on his federal income tax returns. The final payment from the purchaser was received by petitioner in 1970. Respondent determined that petitioner's community property share of taxable income in 1970 was $ 2,047.50 in respect thereof. Petitioner used $ 14,000 of the proceeds from the sheep ranch sale to construct a roof on his riding arena in 1972 and 1973. Petitioner did not have a bank account and conducted all of his financial transactions in cash. He maintained no books of account or other records of income and expenses for the years in issue, but, about once a month, he brought data *641 relating to those matters to a bookkeeper, one Ainsley Boston, Jr., who kept records for him. Petitioner gave Boston a power of attorney in March of 1972, and relied upon Boston to prepare his tax returns for each of the years in issue. Petitioner knew that his federal income tax returns were due to be filed on or before April 15th following each of the years in issue and he asked Boston about the filing of those returns. Boston assured petitioner that everything was taken care of and that he did not have to pay any tax with them. Boston departed the area for the Philippines in 1974, and all records which he maintained for petitioner were lost or destroyed prior to the commencement of respondent's investigation of petitioner's tax liabilities for the years at issue. In his notice of deficiencies respondent determined that petitioner's net income from farming (or horse ranch operations) was in the amounts of $ 3,971 for 1970, $ 4,142 for 1971, $ 4,278 for 1972, and $ 4,544.50 for 1973. In this proceeding respondent concedes that he made an error in his computations and now asserts that petitioner's income from that source was $ 3,885 for 1970, $ 4,052 for 1971, $ 4,186 for 1972, *642 and $ 4,447 for 1973. His determination is based on the median total family income by household in the unincorporated area of San Joaquin County (where petitioner lived) as shown in a San Joaquin Planning Commission special census as of August 1, 1969, which respondent adjusted for inflation according to the consumer price index of the U.S. Department of Labor, Bureau of Labor Statistics, and reduced by taking into account (a) a 10 percent factor in petitioner's favor and (b) California community property laws to attribute half of the resulting amount to petitioner's wife. The resulting figure is set out in a schedule attached to the notice of deficiencies as petitioner's "net income from farming." In an exhibit to and in support of the statement of income tax changes attached to the notice of deficiencies, respondent grossed up that figure as follows (respondent's figures using ratios developed from petitioner's 1969 return): 1970
1971
1. Gross Receipts
$ 17,120.00 $ 18,440.00 Less: 2. Depreciation
(750.00)
(750.00)
3. Pasture Rent
(2,725.00)
(2,728.00)
4. Feed
(4,050.00)
(4,050.00)
5. Other expenses
(1,650.00)
(2,628.00)
6. Net Profit
$ 7,942.00 $ 8,284.00 7. 1/2 to spouse
(3,971.00)
(4,142.00)
8. Taxpayer's Share
of Income
$ 3,971.00 $ 4,142.00 *643 1972
1973
1. Gross Receipts
$ 19,760.00 $ 21,080.00 Less: 2. Depreciation
(621.00)
(739.00)
3. Pasture Rent
(2,728.00)
(2,728.00)
4. Feed
(4,320.00)
(5,400.00)
5. Other expenses
(3,535.00)
(3,124.00)
6. Net Profit
$ 8,556.00 $ 9,089.00 7. 1/2 to spouse
(4,278.00)
(4,544.50)
8. Taxpayer's Share
of Income
$ 4,278.00 $ 4,544.50 No such schedule was recomputed following respondent's confession of error as to the above net profit amounts. Respondent also determined that petitioner's failure to file returns for each of the years in question was due to willful neglect and not due to reasonable cause and that part of the underpayment of tax for each year was due to negligence or intentional disregard of rules and regulations (but without intent to defraud). Petitioner claims that he should be allowed a deduction of $ 8,000 for 1973 due to a loss by fire of 4,000 bales of hay. That loss, however, occurred in 1974. OPINION Petitioner offered no evidence in respect of the gain to be recognized in 1970 on the installment basis from the sale in 1965 of his sheep ranch. We, thus, sustain respondent's determination *644 in respect thereof. Welch v. Halvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Indeed, petitioner did not raise this issue in his petition or at trial and respondent's determination in this regard may be deemed to be conceded. Respondent offers a reconstruction of petitioner's income from his horse stable operations by an unorthodox indirect method of proof, relying heavily upon our decision in Giddio v. Commissioner,54 T.C. 1530 (1970). There we sustained a determination based upon Bureau of Labor Statistics data where there was evidence of taxable income but no information could be acquired to ascertain its amount. Such data were relied upon in that case to establish the amount the taxpayer expended each year to support himself and his family. There being no credible evidence in Giddio of any nontaxable sources of funds or the existence of previously accumulated assets which could have been used for that support, we permitted respondent to equate the result of applying the Bureau of Labor Statistics data with taxable income. This case, on the other hand, demon- strates a substantial source of funds *645 available to petitioner to meet his living expenditures and which potentially accounts for more than the median total family income of persons residing in the unincorporated area of San Joaquin County (with the adjustments made by respondent mentioned in our Findings of Facts above) for the period involved. The facts stipulated regarding petitioner's sale of his sheep ranch in 1965 and those included in respondent's notice of deficiencies (contained in the computation of capital gain to be reported on the installment method in 1970 in respect thereof) demonstrate that in 1970 petitioner received $ 34,552, less some portion or all of whatever was the amount of the mortgage loan existing on the property at the time of its sale (which the parties have stipulated "was of an indeterminate amount"). As for the application of those proceeds, $ 14,000 of them was spent by petitioner in 1972 and 1973 to cover his riding arena, leaving a potential source of $ 20,552 to account for petitioner's $ 16,570 of living expenses (or "income" according to the San Joaquin County study) during the four year period involved. The effect of these facts is to discredit respondent's reconstruction, or, *646 viewed from the other side, to carry petitioner's burden (if it was upon him) to establish a source of funds in excess of the amount determined by respondent to be taxable income. Respondent attempts to buttress his position with an expenditures analysis. He points to the fact that petitioner's payments on a deed of trust, his mobile home, and for food, clothing, utilities and other necessities were in an aggregate amount of $ 6,000 a year. But a case based on the cash expenditure theory here would also have to take into account the community property laws of California and the available funds from the sheep ranch sale, as well as depreciation on petitioner's farm buildings and equipment. See Taglianetti v. United, States,398 F.2d 558, 562-563 (1st Cir. 1968), affd. 394 U.S. 316 (1969). See also, Freeman v. Commissioner,T.C. Memo. 1980-380. We surmise that the reason respondent did not base his reconstruction here on the expenditures method was because of the available funds from the sheep ranch sale. See Hyams v. Commissioner,T.C. Memo. 1958-58. "It is just as bad to back up a forbidden path as it is to walk *647 up it." Greenberg v. United States,295 F.2d 903, 909 (1st Cir. 1961). We hold for petitioner on this issue. Because of our disposition of the case on this basis, we need not consider the casualty loss deduction claimed by petitioner for 1973 nor the additions to taxes determined for 1971, 1972, and 1973. The additions to tax for 1970 in the appropriate amounts determined upon the tax owed on petitioner's unreported gain on the installment basis from the sale of his sheep ranch are sustained. Petitioner acknowledged at the hearing that the responsibility for his agent's, Mr. Boston's, actions and inactions fall upon him, and such is the law. Inter-American Life Ins. Co. v. Commissioner,56 T.C. 497, 511-512 (1971), affd. per curiam 469 F.2d 697 (9th Cir. 1972). In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. Pursuant to General Order No. 6, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in this case.
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩