## JOSEPH F. GIDDIO, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1368–68.   Filed July 27, 1970.

*David M. Markowitz*, for the petitioner.
*David W. Winters*, for the respondent.

Cast in traditional terms, petitioner's allegations are that the notice of deficiency is arbitrary and excessive [2] and that, therefore, the burden of proof that he had taxable income rests with respondent. Cf. *Helvering* v. *Taylor*, 293 U.S. 507 (1935). Petitioner then urges that, since the evidence does not show that he received sufficient taxable income to establish any tax liability for the years in issue, we must enter a decision for him.

We hold that respondent's determination has not been shown to be either arbitrary or excessive.

Although the method used by respondent in determining the disputed deficiencies is unusual, we do not think it is arbitrary. The agents of the Internal Revenue Service believed petitioner was engaged in gambling activities. In 1960 he had been convicted of bookmaking, and in 1964 he was arrested on a charge of engaging in wagering without obtaining the required Federal stamp. While under arrest in 1964 he asserted that he was, or had been, employed. Yet he filed no income tax returns for 1962, 1963, and 1964. The revenue agent to whom his case was assigned sought to make contact with him in an effort to obtain information needed to determine his income tax liability, but was unable to locate him or to obtain any leads as to the source and amount of his income. The agent then made estimates, later incorporated in the notice of deficiency, based on the normal cost of supporting a family the size of petitioner's in New York City. The amount of the taxable income so determined, conceded by petitioner to be a reasonable amount for the support of an individual with two dependents, was based on data compiled by the Bureau of Labor Statistics.

Section 446 [3] confers broad powers on the "Secretary or his delegate," the Internal Revenue Service, to compute the taxable income of a taxpayer. As a general rule, the computation is made under the method of accounting regularly employed by the taxpayer. If no method of accounting has been used by the taxpayer, however, "the computation

---

[2] Par. 5 of the petition is, in part, as follows:

"The facts upon which Petitioner relies as the basis of this proceeding are as follows:

(a) The taxable income as set forth for the year 1962 is not founded upon any facts or any information received from Petitioner.

(b) All figures for the said year, 1962, are based upon an estimate which has no basis in fact whatsoever."

Similar allegations are made with respect to 1963 and 1964.

[3] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income."

Consistent with this broad power to compute taxable income, section 6212(a) provides for the issuance of a notice of deficiency where the Secretary or his delegate "determines that there is a deficiency" in respect of certain taxes. Nowhere in the Code is there a provision which specifies the nature and quality of the evidence which the tax administrator must gather to support the determination, or the form and contents of the notice. *Manuel D. Mayerson*, 47 T.C. 340 (1966). The absence of statutory guidelines suggests that Congress intended that the Internal Revenue Service should have great latitude in making determinations of liability, particularly where the taxpayer files no returns and refuses to cooperate in the ascertainment of his income. Otherwise, "skilful concealment," would be an "invincible barrier" to the determination of tax liability. *United States* v. *Johnson*, 319 U.S. 503, 518 (1943); see also *Rouss* v. *Bowers*, 30 F. 2d 628, 630 (C.A. 2, 1929), certiorari denied 279 U.S. 853 (1929). Where as in this case, there is evidence of taxable income but no information can be acquired to ascertain the amount of such income, we do not think it is arbitrary for the Commissioner to determine that the taxpayer had income at least equal to the normal cost of supporting his family. Cf., e.g., *Toledano* v. *Commissioner*, 362 F. 2d 243, 246 (C.A. 5, 1966), affirming in part a Memorandum Opinion of this Court.[4]

In other comparable situations, notices of deficiency have been sustained even though they were based on meager information relating directly to the amount of the taxpayer's income. In *Bishoff* v. *Commissioner*, 27 F. 2d 91, 93 (C.A. 3, 1928), affirming a Memorandum Opinion of the Board of Tax Appeals, the determination was "based not on the facts of the taxpayer's books of account * * * but on [the Commissioner's] observation of earnings made and taxes paid by corporations in a like business." In *Hallabrin* v. *Commissioner*, 325 F. 2d 298, 302–305 (C.A. 6, 1963), affirming a Memorandum Opinion of this Court, although the Commissioner failed to state the method by which he computed the deficiency, the determination was found not to be arbitrary because it was based on "reasonable estimates." In *Fiorella* v. *Commissioner*, 361 F. 2d 326 (C.A. 5, 1966), affirming a Memorandum Opinion of this Court, the determination reconstructed income for a

---

[4] Since petitioner declined the revenue agent's requests to discuss his income tax liability with him, he cannot contend that the agent failed to take into account either any leads relating to nontaxable sources of income or the existence of any previously accumulated assets which could have been used to support his family. See, e.g., *Holland* v. *United States*, 348 U.S. 121 (1954); *Banks* v. *Commissioner*, 322 F. 2d 530 (C.A. 8, 1963), affirming on this point a Memorandum Opinion of this Court; *Merritt* v. *Commissioner*, 301 F. 2d 484, 487 (C.A. 5, 1962), affirming a Memorandum Opinion of this Court; see also *Marko Durovic*, 54 T.C. 1364 (1970).

period of over 2½ years on the basis of gambling receipts for only 2 days. In *Estate of Peter Finder*, 37 T.C. 411, 423 (1961), the Commissioner assigned erroneous reasons for the disallowance of a deduction for depreciation, yet the burden of proof remained with the taxpayer. See also *Angellino* v. *Commissioner*, 302 F. 2d 797 (C.A. 3, 1962), affirming on this point a Memorandum Opinion of this Court. In all of these cases the accuracy of the determination rather than the method of computation was the controlling factor in determining the validity and effect of the notice of deficiency. Indeed, in *Rouss* v. *Bowers, supra* at 630, the court said that even "assuming * * * the Commissioner's method was arbitrary, this cannot avail * * * [petitioner] in the absence of any showing that it resulted in an erroneous assessment." See also *Bishoff* v. *Commissioner, supra* at 93. To place the burden of proof on respondent, as to the amount of the taxable income, therefore, we think petitioner was required to show that respondent's determination was excessive.

Turning to the evidence as to whether the determination was excessive, petitioner offered testimony which, if fully accepted, would establish that he had no taxable income during the years in issue. He testified that he suffered from tuberculosis during those years, was unable to work, and is still so afflicted. He explained that his father, employed as a plumber, and his mother, working as a dress designer, gave him money to support himself and his wife, and that his wife's former husband furnished support for the two children.

We did not find petitioner's testimony convincing. On the witness stand in this Court, he had neither the appearance nor the bearing of a consumptive, unable to care for himself and supported by his parents; on the contrary, he appeared robust, and was expensively dressed.

Petitioner did not explain, or call any witnesses to explain, either how his name, home address, and social security number came to appear on the payroll records of Wadman, or how his name and social security number came to appear on the payroll records of Anchor Plastics. Nor did he explain the inconsistencies between his statements to the special agent and his testimony before this Court as to his employment. He adamantly denied that he endorsed several payroll checks issued by Wadman to Joseph Giddio; but he did not offer the testimony of a handwriting expert to corroborate his denial. We are not satisfied that the endorsements on the payroll checks were not made by him—particularly in view of the awkward manner in which he proceeded at the trial in preparing specimen signatures.

Petitioner presented no corroborative testimony whatever of the gifts from his parents, the child support payments, or of his alleged

illness. Here the rule may properly be invoked that the failure of a party to introduce evidence which is within his control gives rise to the presumption that, if provided, it would be unfavorable. *O'Dwyer* v. *Commissioner*, 266 F. 2d 575, 584 (C.A. 4, 1959), affirming 28 T.C. 698 (1957), certiorari denied 361 U.S. 862 (1959); *Stoumen* v. *Commissioner*, 208 F. 2d 903, 907 (C.A. 3, 1953), affirming a Memorandum Opinion of this Court. The testimony of his parents, his wife, and his physician would certainly be evidence peculiarly within his control. *Scanlon* v. *United States*, 233 F. 2d 382, 392 (C.A. 1, 1955).

The deficiencies and additions to tax determined by the respondent must be sustained.

*Decision will be entered for the respondent.*