TOLLIE J. GREEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Green v. Commissioner
Docket No. 4848-79.
United States Tax Court
T.C. Memo 1980-164; 1980 Tax Ct. Memo LEXIS 422; 40 T.C.M. (CCH) 312; T.C.M. (RIA) 80164; May 6, 1980, Filed Tollie J. Green, pro se. Robert W. Towler, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax under sections 6651(a), 6653(a), and 6654, I.R.C. 1954, [1] for the years and in the amounts as follows: *423 Deficiencies
Additions to Tax, I.R.C. 1954
Year
in Income Tax
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
1972
$ 546
$ 136
$ 17
1973
2,038
509
65
1974
2,717
679
$136
87
TOTALS
$5,301
$1,324
$136
$169
The issues for decision are (1) whether petitioner received taxable income for each of the years in issue in the amounts as determined by respondent on the basis of expenditures made by petitioner and, if not, the proper amount of petitioner's taxable income, and (2) whether respondent properly determined the additions to tax under sections 6651(a), 6653(a), and 6654 for each of the years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of the filing of his petition herein petitioner resided in Berkeley, California. Petitioner did not file income tax returns for any of the years 1972, 1973, and 1974. However, pursuant to section 6851 petitioner's taxable year 1974 was terminated on August 23, 1974, and an assessment made against him for income tax determined by respondent to be due on the basis of a substitute return filed by the Audit Division of the Internal Revenue Service. *424 Thereafter substitute returns were filed for petitioner by the Audit Division for each of the years 1972 and 1973. On April 26, 1972, petitioner applied to the Parkwood Apartments for lease of an apartment at a rental of $235 a month. The rental application stated that it was by Tollie J. Green and Helen Green [2] and indicated that the two were legally married and that the apartment would be occupied only by the two of them. On this rental application petitioner showed his employment as being by Le Jour Barber Shop as a barber and hair stylist with a salary of $650 a month. The petitioner was not married by any ceremony or through obtaining any license at the time this application was filed, although at the time he considered himself to have in the nature of a common law marriage to Constance Varreos, who also used the name of Gloria Sanchez and the name of Helen Green. Petitioner and the person who had represented herself on the rental application to be Helen Green continued to live in the apartment they rented at Parkwood Apartments from May of 1972 until the fall of 1974. *425 Sometime around September 1972 petitioner entered into a business operation as a part owner. The business which was known as Lions Boutique was a clothing store and tailor shop. He continued to work at the Lions Boutique as part owner until sometime late in 1973. In April of 1973, in connection with a prospective purchase of a 1973 Cadillac Eldorado, petitioner filed a credit application in which he showed his monthly income from the Lions Boutique to be $2,500. On this application he showed his prior employment to have been with the Le Jour Barber Shop. Around June 1 of 1973 petitioner closed the purchase of the 1973 Cadillac automobile. The closing statement showed petitioner as the purchaser of the automobile and showed the following with respect to the cost of the automobile and how it was to be paid for: I Vehicle, etc. Price $9,801.00 T Sales Tax 539.06 E Other Taxes M 1. CASH PRICE $10,340.06 2. TOTAL DOWN PAYMENT CASH a) Previously Paid $3,500.00 b) Paid Herewith Cash Downpayment $3,500.00 TRADE IN Describe: 1969 Cadillac Gross Value $2,400.00 Less Lien Trade-in (Net) $2,400.00 $5,900.00 3. UNPAID BALANCE OF CASH PRICE (1 less 2) *426 $4,440.06 4. INSURANCE (Total Gross Premium per Statement of Insurance) 5. OFFICAL FEES (Financed) LICENSE $ 76.00 CERTIFICATE OF TITLE REGISTRATION 12.00 FILING/RECORDING $ 88.00 6. UNPAID BALANCE (3, 4+5) $4,528.06 7. PICK-UP PAYMENT (Must be payable before 2nd otherwise scheduled payment) 8. AMOUNT FINANCED (6 less 7) $4,528.06 9. FINANCE CHARGE $ 814.70 10. ANNUAL PERCENTAGE RATE 11.08% 11. TOTAL OF PAYMENTS (6+9) $5,342.76 Payable in 36 installments as follows: equal successive monthly installments of $148.41 commencing July 20, 1973 The $3,500 paid as a cash downpayment on the 1973 Cadillac was composed of several amounts of cash brought into the office of the dealership on different occasions until the total of $3,500 was accomulated to be applied toward the purchase of the automobile. The 1969 Cadillac which was traded in on the 1973 Cadillac Eldorado was registered in petitioner's name and was turned in when final delivery of the 1973 Eldorado was made to petitioner and registered in his name. In the latter part of August 1974 the police came to petitioner's apartment and arrested petitioner, Gloria Sanchez (Helen Green/Constance *427 Varreos), and Richard Green (petitioner's brother who was a minor at the time). The police report showed that some small amounts of cocaine were found in the apartment and that a total of 147 grams of cocaine were found immediately outside the apartment or in the Cadillac automobile registered in petitioner's name. Of the 147 grams, 70 grams were found in a tree on a hill immediately back of the apartment, 42 grams in a fire extinguisher right outside the apartment door, and 35 grams in the trunk of the Cadillac automobile registered in petitioner's name. On August 22, 1974, bail for petitioner and Gloria Sanchez of $5,000 each was posted. Initially both defendants pled not guilty. On September 2, 1975, petitioner pled guilty to the onecount information which charged him with possession for sale of approximately five ounces of cocaine. The minutes of the Superior Court of the State of California in and for the County of Alameda which records petitioner's change of plea from not guilty to guilty also bears the notation "As to defendant Sanchez: On motion of the District Attorney and pursuant to the plea of the co-defendant, court orders action dismissed and defendant discharged *428 forthwith." During the proceedings in which petitioner pled guilty, the court informed him "You are presently charged with possession of cocaine for sale. The District Attorney says if you plead guilty as charged, your co-defendant will be released without charge, Miss Sanchez. * * *" The files as to action taken against petitioner's minor brother Richard Green were sealed because of the action having been taken with respect to a juvenile. In a motion to reduce bail filed on petitioner's behalf on August 15, 1975, in the Superior Court of the State of California in and for the County of Alameda, the following representation was made: The nature of the offense is serious, involving a total of approximately five ounces of cocaine, of which defendant's brother Richard Green was in possession of one and one-quarter ounces at a place physically distant from defendant. The preliminary transcript and police reports support and imply activity for sale of cocaine by defendant. No observation of sale was made by police. In August 1972 purchases of cocaine in the Berkeley area were made at prices ranging from a low of $1,000 up to $1,325 an ounce. At the time the police found the *429 cocaine in and around the apartment in which petitioner and Gloria Sanchez resided, they also found $2,700 in cash in the apartment. This cash was subsequently turned over to representatives of the Internal Revenue Service who initially considered it to belong equally to petitioner and Miss Sanchez (Helen Green/Constance Varreos). However, when petitioner furnished an affidavit to representatives of the Internal Revenue Service that the entire $2,700 belonged to Constance Varreos, representatives of the Internal Revenue Service accepted his representation and applied the entire $2,700 as a credit on her account. When an investigator of the Internal Revenue Service called at the Parkwood apartment in August 1974 in connection with the termination of petitioner's taxable year, he talked to Constance Varreos as he knew her (or Helen Green). He was also aware that another male was living in the apartment. The other male who was living there was Richard Green, petitioner's younger brother. Respondent in the notice of deficiency determined that petitioner received total income of $3,772 in 1972, $8,966 in 1973, and $11,373 in 1974. The following explanation of the basis on which the *430 total income was determined was given in the notice of deficiency: 1972
1973
1974
Cost of narcotics in your possession
on August 23, 1974
$ 5,250
Estimated living expenses, based on
Bureau of Labor Statistics
$1,892
$1,756
1,962
projections
Other expenses: Rent
1,880
2,820
2,380
Down payment-1973 Cadillac
3,500
Auto payments
890
1,781
Total income, as determined
$3,772
$8,966
$11,373
The cost of narcotics was computed at 147 grams (5-1/4 ounces) at $1,000 per ounce. At the trial petitioner effectively admitted that the total income as determined for 1972 of $3,772 was proper. For the years 1973 and 1974 he accepted respondent's computation of his estimated living expenses. Petitioner agreed that the amount shown in the computation as rent was the total rent paid for the apartment but contended that he had not paid the total rent. He contended that Helen Green and his brother and at times another person had paid a part of the rent. Petitioner claimed that none of the $3,500 downpayment on the Cadillac was made with his funds but that his brother and Helen Green each made part of the payment and that each of them also made *431 part of the monthly automobile payments. Petitioner took the position that even though he was aware of the cocaine which was found in the Cadillac automobile and near his apartment he had not purchased the cocaine. OPINION The issues here are purely factual. It is well settled that when a taxpayer has no record of his income, respondent may reconstruct his income by some appropriate means. See Giddio v. Commissioner, 54 T.C. 1530 (1970). Petitioner does not deny that he had some income in each of the years here in issue and does not deny that he did not file an income tax return for any of these years. [3] Petitioner estimated that his income in 1972 was around $4,500, which was more than the amount of his income for 1972 as determined by respondent. Petitioner, however, contends that he did not have the amount of income computed by respondent in either 1973 or 1974. Petitioner stated that at first the boutique was successful and he made substantial income from it. He stated, however, that in the spring or summer of 1973 it turned out to be a losing proposition and for that reason he "got out of it" around August of 1973. Petitioner for the years 1973 *432 and 1974 contends that he did not pay the entire apartment rent. He states that some of the apartment rent was paid by his brother who was living there and by Helen Green. Petitioner produced a witness who confirmed his statement that other persons were living in the apartment. The witness produced is the person who testified that petitioner was the father of her child and that during the years 1972, 1973, and 1974, she had visited petitioner's apartment on numerous occasions. She testified that "Richard, Connie, Helen and Tollie [petitioner]? were living there all during the time she visited the apartment. She stated that even though she knew they were all living there she did not have any knowledge of who actually paid the rent, but had heard them discussing the fact that they were sharing the apartment. She stated that she also heard discussions with respect to the Cadillac automobile that "* * * you guys had got together and bought it, you know." *433 In 1974 there is a verification of two other people living in the apartment with petitioner from the agent who called at the apartment. Although petitioner apparently had a sister named Helen Green, there is no indication that she actually lived in the apartment with petitioner. However, petitioner's brother Richard, and Connie (or Helen or Gloria) apparently did live in the apartment in 1973 and 1974. Respondent's witness testified that the amount shown as the rent of the apartment in the notice of deficiency was the total rent paid for the apartment in each of the years 1973 and 1974. He, of course, did not know who made the rental payments, but used the total payments as if they were paid by petitioner. The only direct evidence we have that petitioner's brother Richard or any other person made any of the rental payments is petitioner's testimony. We find petitioner's testimony for the most part not to be credible. For instance, he showed his income from the Lions Boutique on a credit application to be $2,500 a month. This credit application was filed in April. Four monthly payments of $2,500 would have totaled $10,000, which is more than the total income determined by *434 respondent to have been received by petitioner in 1973. Petitioner, in answer to questions by the Court, stated that he had an equal partner in the Lions Boutique and that in late 1973 he pulled out and left the business to him. In answer to the question of whether he had any money settlement with the partner when he pulled out from the business, he replied "No." He also stated he had made no money payment toward the purchase of his interest in the Lions Boutique. He stated: [We] had a conflict and I just felt it was best to just--to just get out with just getting my name off of the--just getting--just getting free and clear at that point. THE COURT: But, you did draw money on a monthly basis from the tailor shop while you were there? MR. GREEN: Right. Yes, I did. THE COURT: And you never returned any of that to Randy Randolph? MR. GREEN: No. THE COURT: So, whatever you did draw on a monthly basis for that year you were there, was your income? MR. GREEN: Right. Petitioner testified that after he pulled out of the Lions Boutique, which he stated had been losing money before he pulled out, he worked for his mother in connection with her child care center and *435 that his only employment in 1974 was in connection with his mother's child care center. The record shows that petitioner's brother Richard was also arrested for possession of narcotics when petitioner was arrested. There is some indication that Richard was a regular resident of the apartment. The Court suggested that petitioner should call his brother as a witness, but this was not done and there was no explanation of why it was not done. Considering the record as a whole, we conclude that petitioner has failed to show that his brother or other persons living in the apartment paid a part of the apartment rent in 1973 or 1974. There is no evidence other than petitioner's statement that any part of the downpayment of the Cadillac automobile or the monthly payments made on the note in paying for the automobile were made by any person other than petitioner. The automobile was registered in petitioner's name. Petitioner testified that his mother made some of the payments on the 1973 Cadillac as payment to him for working in her child care center. Petitioner does not deny that the amount of downpayment and the total amount of monthly payments made on the automobile were correctly *436 computed by respondent. His only contention is that not all of the money used to make the payments was his money. Considering all the facts here of record, including the fact that the automobile was registered in petitioner's name and the fact that petitioner turned in a 1969 Cadillac registered in his name as part of the downpayment, we conclude that petitioner has not established that the total payments on the automobile were not made by him. Again, it is pointed out that petitioner gave no explanationi for not calling his brother Richard as a witness with respect to the payments made on the 1973 Cadillac. [4]
Petitioner testified that while he admitted knowledge of the cocaine, he had not in fact bought it. However, he was not willing to disclose who had bought it or make any other explanation *437 of its presence in and around his apartment. The record does, however, indicate and petitioner did effectively testify that the case against his brother Richard with respect to the possession of cocaine for sale was not dismissed but was not a public record since Richard was considered a juvenile at the time. Also, the agent who had investigated petitioner's tax liability in connection with the termination of the year 1974 testified to the same effect. Considering this evidence, along with the statement in the motion to reduce bail, that one and one-fourth ounces of the five plus ounces of cocaine were in the possession of petitioner's brother Richard Green, we conclude that Richard participated in the purchase of the cocaine. We therefore conclude that petitioner purchased cocaine in 1974 but that the amount purchased by petitioner was four ounces rather than five and one-fourth ounces. The amount to be included in petitioner's 1974 income as funds used to purchase cocaine should be $4,000 rather than $5,250 as determined by respondent. Petitioner has totally failed to show any error on the part of respondent in the determination of the additions to tax under sections 6651(a)8 *438 6653(a), and 6654. He attempted no explanation with respect to any addition to tax other than the failure to file returns. His explanation that he relied on the Lions Boutique bookkeeper to file his returns, if true, is no excuse for his not taking the personal responsibility of filing his returns. The bookkeeper was not called as a witness to explain what responsibility, if any, he took for preparing or filing petitioner's returns. We therefore sustain the determination of respondent as to the additions to tax under sections 6651(a), 6653(a), and 6654. Respondent at the trial conceded that his determination of petitioner's self-employment tax for 1974 was in error and petitioner did not question the determination of his self-employment tax for 1972 or 1973. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue.↩
2. Petitioner apparently had a sister named Helen Green who lived with his mother and helped his mother in the operation of a child care center.↩
3. Petitioner testified at the trial that he relied on the bookkeeper who worked for Lions Boutique to file his tax returns but offered no other explanation for his failure to file returns for any of the years here in issue.↩
4. Petitioner explained the absence of Helen/Connie/Gloria Sanchez at the trial. Apparently she was in the courtroom at the time the case was called but encountered difficulty with the man with whom she was now living because of appearing with petitioner. Petitioner explained her absence by the fact that she was afraid to come another time and encounter the same type of difficulty.↩