EDWARD J. HANNIFIN AND SHIRLEY A. HANNIFIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hannifin v. Commissioner
Docket No. 12012-77.
United States Tax Court
T.C. Memo 1980-482; 1980 Tax Ct. Memo LEXIS 103; 41 T.C.M. (CCH) 273; T.C.M. (RIA) 80482; October 27, 1980, Filed Edward J. Hannifin and Shirley A. Hannifin, pro se. Charles S. Jeglikowski and Dennis C. DeBerry, for the respondent. DAWSON
MEMORANDUM OF FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge James M. Gussis pursuant to the provisions of section 7456(c), Internal Revenue Code of 1954, [1] and Rules 180 and 181 of the Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *104 OPINION OF THE SPECIAL TRIAL JUDGE GUSSIS, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income tax for the years 1972 and 1973 in the respective amounts of $561.55 and $404. The issue is whether petitioner Edward J. Hannifin, who was employed as a blackjack ("21") dealer, understated the amount of "toke" (tip) income received by him in 1972 and 1973. FINDINGS OF FACT Some of the facts were stipulated and they are so found. Petitioners were residents of Las Vegas, Nevada at the time the petition herein was filed. Petitioner Edward J. Hannifin was employed as a blackjack ("21") dealer during the years 1972 and 1973 at the Golden Nugget Hotel Casino (hereinafter the Golden Nugget). Petitioner worked 221 shifts in 1972 and 135 shifts in 1973. During this period petitioner worked the eight-hour swing shift which in petitioner's case was generally from 8pm to 4am. In addition to his regular salary petitioner received "toke" income from players at the Golden Nugget in 1972 and 1973. Petitioner received "tokes" either directly from the player or as a consequence of a winning bet placed for him by the player. Any winnings from such *105 separate bets placed for the dealer belonged to the player until he actually gave such winnings to the dealer. All "tokes" received by the dealer were placed in a common "toke" box and the "tokes" so pooled were divided at the end of each eight-hour shift among all the dealers (including the blackjack dealers) who had worked that particular shift. During the years 1972 and 1973 the Golden Nugget employed a timekeeper for each of the three shifts, i.e., the day shift, the swing shift and the graveyard shift. Among other duties the timekeeper for each shift was responsible for the collection, counting and distribution of the "tokes" received in said shift. A timekeeper received a half share in the "tokes" collected during the shift worked by him. Petitioner kept no record of the "tokes" received by him while employed as a blackjack dealer at the Golden Nugget in 1972 and 1973. Respondent determined that petitioner had unreported "toke" income in 1972 and 1973 in the following amounts: 1972
221 shifts at $17.13 per shift
$3,786
Less "toke" income reported
455
Unreported "toke" income
$3,331
1973
135 shifts at $21 per shift
$2,835
Less "toke" income reported
540
Unreported "toke" income
$2,295
*106 OPINION Petitioner was employed as a blackjack dealer at the Golden Nugget Casino in 1972 and 1973, and, in addition to his regular salary, he received a share of the total amount of "tokes" received from casino patrons by the dealers who worked on the same eight-hour shift as the petitioner. Such "tokes" represent taxable income within the meaning of section 61. Olk v. United States, 536 F.2d 876 (9th Cir. 1976). There is no persuasive evidence that petitioner kept any reliable record of his "toke" income in 1972 and 1973. Under such circumstances the respondent is authorized to compute income by whatever method clearly reflects the taxpayer's income. Giddio v. Commissioner, 54 T.C. 1530 (1970). No particular method of reconstructing income is required since the circumstances will vary from case to case. Harbin v. Commissioner, 40 T.C. 373, 377 (1963). Respondent's determination is prima facie correct and petitioner has the burden of showing it is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rules 142(a), Tax Court Rules of Practice and Procedure.
Respondent's determination of the "toke" income *107 received by dealers on the swing shift (which was the shift generally worked by petitioner in 1972 and 1973) was based in large part upon daily diaries kept in 1972 and 1973 by the timekeepers at the Golden Nugget for the day shift and the graveyard shift of their one-half shares of the "tokes" received by them on their respective work shifts. [3] These diaries were meticulously kept. Respondent used the diaries to compute an average daily "toke" amount received by dealers for the day shift in 1972 and 1973 in the respective amounts of $17 and $19 and for the graveyard shift in 1972 and 1973 in the respective amounts of $19 and $21. The daily diaries were subjected to a thorough statistical analysis which established a reliable weekly average of "tokes" received by dealers on the graveyard shift during the years 1972 and 1973. Respondent relied upon the amounts of "toke" income reconstructed for the graveyard shift to determine petitioner's "toke" income for the swing shift. [4]
*108 We have carefully considered petitioner's arguments and we must conclude that he has failed to show error in respondent's determination. The timekeepers whose daily diaries are in evidence testified at the trial with respect to their diaries as well as the procedure followed by them in collecting, counting and distributing to the dealers the equal shares of "toke" income received for a particular shift. There is no evidence of any "inadequacies" in their procedures which would somehow effect the amount of "toke" income attributed to petitioner. Moreover, the number of shifts worked by petitioner in 1972 and 1973 has been stipulated and respondent's determination is based upon said stipulation rather than upon an arbitrary work week. Petitioner also contends that his poor health in 1972 and 1973 should be considered. However, any absences from work in those years due to illness would be reflected in the number of shifts worked by petitioner. We have carefully considered the entire record and we conclude that respondent's determination of "toke" income received by petitioner in 1972 and 1973 must be sustained. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the Order of this Court dated November 22, 1978 the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not inapplicable to the proceedings in this case. Said Order is based on the authority of the "otherwise provided" language of that rule.
3. The diary kept by the timekeeper for the graveyard shift for 1973 shows entries through October 7 of that year, while the diary kept by the timekeeper for the day shift in 1973 shows entries through June 13 of that year. ↩
4. The record indicates that the swing shift at the Golden Nugget Casino during the year 1972 and 1973 was either as active or more active than the graveyard shift.↩