CHARLES N. HOWARTH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Howarth v. Commissioner
Docket No. 17131-79.
United States Tax Court
T.C. Memo 1981-393; 1981 Tax Ct. Memo LEXIS 345; 42 T.C.M. (CCH) 536; T.C.M. (RIA) 81393; July 30, 1981. Charles N. Howarth, pro se. Cynthia J. Olson, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined the following deficiencies *346 and additions to tax in petitioner's income tax for the taxable years 1976 and 1977: Additions to Tax
Tax
Sec.6651(a)
Sec.6653(a)
Sec.6654 [1]
1976
$ 6,012
$ 1,503
$ 301
$ 224
1977
6,585
1,646
329
234
The issues for decision are: (1) whether petitioner failed to report income from self-employment totaling $ 23,542 in 1976 and $ 24,814 in 1977; (2) whether petitioner is liable for the addition to tax imposed by section 6651(a); (3) whether petitioner is liable for the addition to tax imposed by section 6653(a); and (4) whether petitioner is liable for the addition to tax imposed by section 6654(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in Colorado Springs, Colorado. Throughout 1976 and 1977, petitioner resided with his wife and five children. Petitioner's oldest child was born in 1959 and *347 his youngest child was born in 1971. During the years at issue, three of petitioner's children were in high school. During the years at issue, petitioner was self-employed in Colorado Springs, Colorado, as a retail seller of sports apparel and trophies and engaged in business under the name of AAA Monogram. He maintained no permanent records of the gross receipts from his business. Petitioner maintained a cash drawer at his place of business, from which he freely withdrew money for both personal and business expenditures. Petitioner was actively engaged in a tax protest movement called the National Association of Posse Comitatus in Colorado Springs, Colorado. For the years 1976 and 1977, petitioner filed Forms 1040 upon which he supplied no financial information, and on the face of which he made various constitutional objections to the income tax laws. Petitioner paid no federal income tax for the years at issue. As a result of petitioner's failure to file proper income tax returns, respondent commenced an investigation to determine petitioner's correct income tax liability for 1976 and 1977. Initially, respondent contacted petitioner and requested that he provide the *348 information necessary to prepare proper returns for each year. Petitioner refused to provide the information necessary to prepare his income tax returns, stating that it was his constitutional right to refuse to cooperate in the audit. Petitioner maintained that respondent must first secure a search warrant before he would provide such information. As a consequence of petitioner's refusal to cooperate in the audit, respondent turned to third party sources in an attempt to develop the information necessary to determine petitioner's correct income tax liability for the subject years. Respondent canvassed the banks in Colorado Springs to determine whether or not petitioner maintained any bank accounts. The only bank which responded affirmatively to respondent's inquiry was Central Bank of Colorado Springs. Respondent issued a summons to Central Bank of Colorado Springs, and, after a summons enforcement proceeding in which petitioner intervened, the bank turned over to respondent records of a savings account maintained by petitioner covering a period of approximately four months. The records of petitioner's savings account at Central Bank of Colorado Springs were insufficient *349 to reconstruct his income and expenses for the subject years. Since no other information was available, respondent reconstructed petitioner's income by reference to Bureau of Labor Statistics budget figures. For 1976 and 1977 the Bureau of Labor Statistics intermediate budget figures for an urban family with four or more children were $ 23,542.00 and $ 24,804.00, respectively. This is computed by multiplying the intermediate budget figures for a four-person household ($ 16,236.00 and $ 17,106.00, respectively) by the appropriate percentage for a six-person household (145 percent). These figures include personal consumption, such as food, housing, transportation, clothing, personal and medical care, and social security and income taxes. The budget figures do not include items such as deductible business expenses or cost of goods sold. During the years at issue petitioner maintained accounts at the Central Bank of Colorado Springs and Academy Boulevard Bank of Colorado Springs; deposits to these accounts were made in the following amounts: Central Bank of
Colorado Springs
1976
1977
Savings
$ 4,504.73
$ 997.51
Checking
N/A
$ 15,973.35
Academy Boulevard
Bank
Checking
$ 26,267.13
$ 5,966.75
Total Deposits:
$ 30,771.86
$ 22,937.61
*350 In 1976 and 1977 petitioner owned a residence at 2211 Afton Way, Colorado Springs, Colorado. During that period his monthly mortgage payment was approximately $ 250.00. On January 17, 1977, petitioner redeemed a second mortgage on his residence by paying the mortgagee the sum of $ 2,728.91. On October 21, 1975, petitioner entered into an installment land contract for the purchase of real property located at 2444-2446 Gunnison, Colorado Springs, Colorado. That property was adjacent to the location of his business, AAA Monogram. Under the terms of that contract, petitioner was required to make 29 monthly installment payments of $ 400.00 each, beginning December 10, 1975. OPINION During 1976 and 1977, petitioner was a retail seller of sports apparel and trophies; he engaged in business under the name of AAA Monogram. For each year, petitioner filed forms which contained various constitutional objections and which lacked any information from which his tax liability could be computed. Respondent initiated an investigation into petitioner's income tax liability by requesting petitioner to provide the information necessary to ascertain his correct income tax liability. On *351 the basis of purported potential infringements on his constitutional rights, petitioner refused to provide the sought information. Due to petitioner's lack of cooperation, respondent then attempted to develop the necessary information from various banks in the Colorado Springs area. The only information which surfaced at the time, a record of petitioner's savings account at Central Bank of Colorado Springs, was insufficient to determine the amount of petitioner's income. Consequently, respondent determined petitioner's net income from self-employment by reference to Bureau of Labor Statistics budget figures. It is well settled that respondent is entitled to utilize reasonable methods to ascertain a taxpayer's income where the taxpayer either has inadequate records or refuses to make his books and records available for audit. E.g., Holland v. United States, 348 U.S. 121 (1954). Further, it has been held that respondent's use of data compiled by the Bureau of Labor Statistics is a reasonable method of constructing income. Giddio v. Commissioner, 54 T.C. 1530 (1970). Petitioner bears the burden of demonstrating error in respondent's determination. *352 Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a) Tax Court Rules of Practice and Procedure. At the trial, petitioner made no reference to the "outlandish claims and accusations" asserted on the forms he filed with the Internal Revenue Service and the petition filed with this Court. McCoy v. Commissioner, 76 T.C.     (No. 84) (June 15, 1981). Instead, he offered evidence to show the gross receipts and expenses relating to the bowling apparel and trophy business in Colorado Springs which he and his wife operated in 1976 and 1977. According to petitioner, the amounts of gross receipts from the business were $ 29,716.77 in 1976 and $ 36,859.38 in 1977. These figures were taken from sales tax returns filed with the taxing authorities of Colorado and, according to petitioner, accepted as filed. He testified that he kept a tablet as a record of his gross receipts which he discarded after preparing the sales tax returns. We accept petitioner's testimony that these amounts are accurate. Petitioner also introduced two voluminous batches of papers relating to 1976 and 1977, respectively. Attached to these groups were copies of adding machine tapes reflecting *353 over 600 separate items included in the batches. These items were not further separated or classified as to how they related to petitioner's business, although petitioner testified that purchases of inventory are reflected and also that "there's rent payment in there, utilities, yellow page advertising, things like this, all directly business related expenses." He also testified that no personal expenses were included and our inspection of the documents in question tends to confirm this claim. The business expenses thus claimed against gross receipts totaled $ 19,966.10 in 1976 and $ 32,676.94 for 1977. Petitioner's submission, however, is a massive jumble of invoices, both original and copies thereof marked "past due," copies of canceled checks, parcel post receipts, etc. Even a cursory examination of these pieces discloses substantial duplication and triplication of many of them. On the other hand, they do support to a degree petitioner's claim that he incurred substantial expenses in the operation of his business. We accordingly conclude, for lack of any better evidence, that petitioner's documentation supports deductions for business expenses of 50 percent of gross receipts *354 for 1976 and 1977, or $ 14,858.35 and $ 18,429.69, respectively. As we have said before, and repeat here, "[m]athematical exactness is not required where the taxpayer has deliberately failed to keep and maintain any books and records of his business transactions." Conforte v. Commissioner, 74 T.C. 1160 (1980). Any inexactitude here is squarely of petitioner's own making. Thus, petitioner's evidence supports the conclusion that his business produced $ 14,858.35 in income in 1976 and $ 18,429.69 in 1977. Since the business was wholly owned by petitioner, these amounts represent taxable income to him for the years in question. During 1976 and 1977 petitioner and Paul Zenobia, a friend of petitioner's, were active in a tax protest group called the "National Association of Posse Comitatus." Petitioner testified that he received $ 3,000 from Zenobia in 1976 and $ 5,000 in 1977, both of which amounts petitioner called loans. Petitioner produced no evidence whatsoever to support his contentions that these amounts constituted loan proceeds. Petitioner admitted that there was no interest charged, no repayment schedule and that he furnished no security for the "loans. *355 " He did not produce any copies of promissory notes. He claimed, in effect, that the loans were merely his for the asking, and stated that the proceeds were used for living expenses. We conclude, therefore, that the amounts in question constitute gross income received by petitioner in 1976 and 1977 through his Posse Comitatus activities. Petitioner had five dependent minor children living at home during the years in question, for whom he furnished over half the support and whom he is entitled to claim as exemptions. The remaining issues for decision are whether petitioner is liable for the additions to tax imposed by sections 6651(a), 6653(a) and 6654(a). A Form 1040 which does not disclose sufficient information relating to a taxpayer's income and deductions, from which his tax can be calculated, does not constitute a return under section 6012. United States v. Moore, 627 F.2d 830 (7th Cir. 1980); Hatfield v. Commissioner, 68 T.C. 895 (1977). Under this definition, petitioner did not file a return for either year, and the addition to tax under section 6651(a) was properly imposed in the absence of any demonstration by petitioner of a valid *356 reason for such failure. "Wildly espoused positions," including a blanket refusal to file tax returns based upon a Fifth Amendment theory, do not by the wildest stretch of the imagination add up to "reasonable cause" under section 6651(a). McCoy v. Commissioner, supra.
Section 6653(a) imposes an addition to tax if any part of the underpayment of tax is due to negligence or intentional disregard of rules and regulations. The deficiencies determined in this case result not only from petitioner's intentional disregard of his duty to file proper income tax returns, section 6012, but also from his failure to keep adequate books and records, Zivnuska v. Commissioner, 33 T.C. 226 (1959). As a result, we sustain the imposition of this penalty. An addition to tax for failure to pay estimated tax is authorized by section 6654(a). Petitioner did not make a declaration of his estimated tax under section 6015 (his gross income from non-wage income clearly exceeded $ 500). Petitioner failed to pay the requisite amount of estimated tax as section 6153 requires and he is accordingly liable for the addition to tax under section 6654(a). Decision will be entered *357 under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise specifically indicated.↩