BRYAN L. DENSON and THELMA HAYES DENSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Denson v. Commissioner
Docket No. 4176-80
United States Tax Court
T.C. Memo 1982-360; 1982 Tax Ct. Memo LEXIS 382; 44 T.C.M. (CCH) 275; T.C.M. (RIA) 82360; June 28, 1982
*382 1. Use of source and application of funds method for computing petitioners' taxable income, approved under the circumstances. 2. Taxpayer's personal expenses determined by using appropriate Bureau of Labor Statistics tables. 3. Additions to tax for negligence not imposed. Bryan L. Denson, pro se. Donald W. Hicks, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax for the taxable years 1976 and 1977 as follows: Addition to tax
Year
Deficiency
sec. 6653(a) [1]
1976
$ 692.23
$ 34.61
1977
1,409.64
70.48
*383 The issues for decision are (1) whether petitioners had unreported income as determined by respondent for the taxable years 1976 and 1977, and (2) whether petitioners are liable for an addition to tax imposed under section 6653(a) for negligence. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioners Bryan L. Denson (hereinafter petitioner) and Thelma Hayes Denson, husband, and wife, resided in Amarillo, Tex., at the time they filed their petition herein. During 1976 and 1977, petitioners owned and operated a retail health foods store in Amarillo, Tex. Petitioners refused to submit their books and records to substantiate their income and deductions for the taxable years 1976 and 1977. [2] Respondent therefore reconstructed petitioners' taxable income for these years using the "source and application of funds method." *384 In his source and application of funds analysis, respondent used as known sources of funds the amounts reported on petitioners' returns as gross receipts from their business and gross rental and royalty income (with one exception in 1976, which is not material in light of our conclusions). As known expenditures, respondent used the amounts petitioners reported on their returns as business and rental expenses; to this respondent added estimated personal expenses of $ 12,488.93 for 1976 and $ 13,107.44 for 1977 to arrive at total funds applied. Since the total of the funds applied exceeded the total of the funds available from known sources by $ 2,760.02 in 1976 and $ 5,712.67 in 1977, it was determined that petitioners had unreported taxable income in those amounts in those years. The amounts respondent determined petitioners spent for personal expenses also exceeded petitioners' taxable income as reported on their tax returns for 1976 and 1977 by the amounts mentioned above, so respondent increased petitioners' taxable income by those amounts and determined the deficiencies in tax accordingly. To determine petitioners' personal expenditures each year, respondent used publications *385 entitled "Bureau of Labor Statistics for Family Budget Levels in the Southwest." These publications contain tables giving the average annual living expenses of a hypothetical family of four, under certain described circumstances, living in certain metropolitan areas in the southwest part of the country. There is a table for each of three different categories of families, i.e., for families having a higher, an intermediate, and a lower standard of living. Since the tables do not list Amarillo, Tex., respondent used an average of the amounts given for families having a higher standard of living in Austin, Dallas, and Houston, Tex., in his computations. To this average amount respondent then applied an equivalency scale published by the Bureau of Labor Statistics (BLS) reflecting the costs for families of different size, age, and composition. The factor used for petitioners (only 2 persons both being between the ages of 55 and 64) was 59 percent. Applying this factor to the average amounts obtained as above, respondent determined that petitioners' living expenses were $ 12,448.93 in 1976 and $ 13,107.44 in 1977. If the Bureau of Labor Statistics table for a family having an intermediate *386 standard of living is used in the computation described above, rather than those for a family having a "higher" standard of living used by respondent, the estimated living expenses for petitioners' family would be $ 8,631.11 for 1976 and $ 8,962.69 for 1977. [4]
The notice of deficiency also disallowed a part of the medical expenses claimed by petitioners due to the increase in income, and increased the estimated deduction for sales tax for the *387 same reason. Petitioners offered no evidence on these adjustments, so they are automatic. OPINION The first issue is whether petitioners had unreported income as determined by respondent for the taxable years 1976 and 1977. Petitioners refused to submit their books and records to substantiate their income and deductions. Therefore, respondent used a source and application of funds analysis, together with the Bureau of Labor Statistics tables mentioned in our Findings of Fact, to estimate petitioners' personal expenditures. Since respondent determined that petitioners' personal expenditures for 1976 and 1977 exceeded their taxable income as reported for such years, he increased their taxable income accordingly. The only issue in this respect is whether respondent was entitled to use, and properly used, the Bureau of Labor Statistics tables to determine petitioners' personal expenditures for the years involved. Section 7602 authorizes the Secretary to examine any books, papers, records, or other data which may be relevant for the purpose of ascertaining the correctness of any return. Where the taxpayer refuses to cooperate in the ascertainment of his income, the Internal Revenue *388 Service has great latitude in making determinations of liability. Giddio v. Commissioner, 54 T.C. 1530 (1970). Respondent can use various indirect methods of proof to reconstruct taxpayer's income. One such method, used in the instant case, is to rely on the Bureau of Labor Statistics tables. See Giddio v. Commissioner, supra.This method is based on the reasonable assumption that the taxpayer had taxable income at least equal to the normal cost of supporting his family. [5] Petitioners have the burden of proving that respondent's determination is incorrect. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioners do not seriously object to respondent's method of computation or use of the BLS tables to determine their personal expenses. They do object, however, to respondent's use of the table for "higher" budget families in making the determination. Neither the notice of deficiency nor any evidence offered at the trial indicates why the revenue agent who audited petitioners' returns used the *389 tables for higher budget families. On the other hand, petitioner testified that he and his wife lived modestly and conservatively, they grew some of their food, and obtained some of their food through the store at wholesale prices, [6] they bought and used only second-hand cars, they spent very little on clothing, entertainment, etc., and had taken only two vacations during their married life. Petitioners estimated that their personal living expenses for each year were between $ 8,000 and $ 9,000. Based on all the evidence, we are convinced that petitioners' standard of living during both 1976 and 1977 was more comparable to that of an intermediate budget family than that of a higher budget family, and that the figures given in the BLS tables for intermediate budget families should be used to estimate petitioners' personal expenses for those years. Using the latter figures and applying the same computation used by respondent in arriving at the figures determined in the notice of deficiency, we conclude that petitioners' personal expenses for 1976 were $ 8,631.11 *390 and for 1977 were $ 8,962.69. Using the latter figures in lieu of respondent's figures for estimated personal expenses in his "Analysis of Income Using Source and Application of Funds," the result is that petitioners' expenditures for 1976 did not exceed the income reported on their return for that year, and petitioners' expenditures for 1977 exceeded their income reported on their return for 1977 in the amount of $ 1,027.92. Accordingly, we conclude that petitioners had no unreported income for 1976 and had unreported income of $ 1,027.92 for 1977. The only other issue is whether petitioners are liable, for each of the taxable years in issue, for an addition to tax imposed under section 6653(a) for negligence or intentional disregard of the rules and regulations. While the burden of proof with respect to this issue is on petitioners, Hatfield v. Commissioner, 68 T.C. 895 (1977), we are satisfied in light of their testimony and the record as a whole that any failure on their part to report their taxable income was not intentional or negligent. We hold for petitioners on this issue. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue.↩
2. This case should never have come to Court. When petitioner was called in for an audit he was not permitted to record the proceedings on his tape recorder. Petitioner thereupon refused to turn over to respondent's agents his books and records, and apparently persisted in that course of conduct until shortly before the trial. Since no records were introduced in evidence, we do not know whether petitioners' records would have supported petitioners' returns as filed, but we believe they would have provided the basis for an amicable settlement of petitioners' tax liability without the necessity of going to Court.↩
4. Paragraph 6 of the Stipulation of Facts recited, in part, "Attached hereto as Exhibits 4-D, 5-E, and 6-F, respectively, are * * * (the three BLS publications, by title, mentioned above). The exhibits attached contained only the cover page of each pamphlet and one additional page containing the table of figures for "higher" budget families. The complete pamphlets, which we obtained from the Bureau Of Labor Statistics, also contain tables reflecting the average annual cost of living of intermediate and lower budget families. This is the basis for this finding of fact. If necessary, we have taken judicial notice of these additional pages of the exhibits. See Rule 201, Federal Rules of Evidence.↩
5. Wheeling v. Commissioner, T.C. Memo. 1982-246↩.
6. Amounts were subtracted from purchases on the returns for both years for items withdrawn for personal use.↩