T.C. Memo. 1998-38


UNITED STATES TAX COURT


WALE O. OSIJO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16925-96.                    Filed January 28, 1998.


Wale O. Osijo, pro se.


Mark A. Weiner, for respondent.


MEMORANDUM OPINION

NAMEROFF, Special Trial Judge:  This case was heard pursuant to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and 182.  Respondent determined deficiencies and additions to tax in petitioner's Federal income tax for the taxable years 1989 through 1994 as set forth below:

---

[1]  All section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

|              |              | Addition to Tax |
| Year         | Deficiency   | Sec. 6651(a)(1) |
| 1989         | $2,214       | $554            |
| 1990         | 2,189        | 547             |
| 1991         | 3,088        | 772             |
| 1992         | 4,109        | 1,027           |
| 1993         | 1,470        | 368             |
| 1994         | 471          | 118             |

In the notice of deficiency, respondent determined that petitioner had failed to file Federal income tax returns for all subject years. Respondent further determined for the years 1989 through 1992 that petitioner earned Schedule C income in the respective amounts of $10,637, $10,637, $13,970, and $17,797. These determinations were based upon Bureau of Labor statistics for one person living in rented premises in the Fresno, California, area, and were adjusted downward, in some years, to account for nontaxable worker's compensation that petitioner had received.

For the taxable years 1993 and 1994, respondent determined that petitioner earned interest income of $8,862 and $10, respectively, and Schedule C income of $3,750 and $4,050, respectively. For 1994, respondent further determined that petitioner had nonemployee compensation of $2,959.

For each of the years 1989 through 1994, respondent determined that petitioner was liable for self-employment tax, and, for the years 1990 through 1994, that petitioner was entitled to a deduction for one-half of the self-employment tax determined. Finally, respondent determined that petitioner was

liable for additions to tax under section 6651(a)(1) for all years before the Court. The issues for decision pertain to whether respondent was correct in making the above determinations.

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are included herein by this reference. Petitioner resided in Fresno, California, at the time he filed his petition.

## Background

Petitioner graduated from Western Kentucky University in 1986. Soon after, he moved to the Fresno area and worked for a restaurant as an assistant manager. In 1987, petitioner moved to Oakland, California, to study in a master's in business administration program with a concentration in taxation at Golden Gate University.

To support himself through school, petitioner worked several part-time jobs, including working as a security guard at an Oakland housing complex. On October 7, 1988, while petitioner was on night shift with 2 other security guards at the housing complex, assailants entered the security office with high-powered rifles and began shooting. One guard was killed and one escaped. Petitioner was shot 15 times in the abdominal area and was taken to the Alameda County Hospital.

After an approximate 3-month stay in the hospital, petitioner was discharged to a convalescent hospital. Initially, petitioner's employer paid for his convalescent care. Soon after, however, petitioner's employer refused to pay for the rehabilitation, and petitioner had to leave the convalescent hospital.[2]

Petitioner then returned to Fresno to live with his twin brother and his sister-in-law. Petitioner's sister-in-law was a nurse and provided him with medical attention. During his recovery period, which extended through November 1989, petitioner did not work.

In November 1989, petitioner's brother and sister-in-law moved to Nigeria. From that point on, petitioner was on his own, and he began to rebuild his life. He decided to return to school and attended Long Beach State University, where he lived in the dormitory. For the fall 1990 term, petitioner changed universities and enrolled at the University of California at Irvine.

Meanwhile, petitioner hired an attorney, Arthur Levy, to secure disability income from the Employment Development Department of the California Department of Employment (EDD).

---

[2] While petitioner was in the hospital, the California Department of Victims of Violent Crime paid petitioner's rent on his Oakland studio apartment. The department also assisted petitioner in returning to Fresno from the convalescent hospital.

Commencing October 7, 1988, the EDD began paying petitioner temporary disability of $133.33 per week. Subsequently, petitioner hired attorney Gary Snyder to pursue other claims. On or about July 17, 1991, petitioner resolved his claims against the California Department of Industrial Relations Uninsured Employer's Fund. Petitioner was awarded temporary disability of $133.33 per week from October 7, 1988, through October 5, 1989, in addition to permanent disability of $133.33 per week from October 12, 1989, through July 17, 1991, subject to certain deductions. Deductions were made for temporary disability previously paid, for moneys paid by the EDD from October 6, 1988, through August 25, 1989, at $133.33 per week, and for Mr. Snyder's attorney fees. Thus, on July 17, 1991, petitioner received a final settlement of $8,717.81.

In 1990, Gary Snyder introduced petitioner to attorney Georgia Michell (Ms. Michell). Petitioner hired Ms. Michell to represent him in a personal injury action relating to the injuries he sustained in the 1988 shooting incident.[3] Petitioner signed a contract agreeing to pay Ms. Mitchell a fee of 40 percent of the damages award if the case was settled or tried and a 45-percent fee if appellate work was required. Ms. Michell, on

---

[3] A substantial portion of the factual findings at this point is derived from the findings set forth in the unpublished opinion of the Court of Appeal of the State of California, First Appellate District, Division Five, in the case of Osijo v. Ganong and Michell et al., said opinion having been filed Apr. 12, 1996.

petitioner's behalf, filed a lawsuit against various defendants, including petitioner's employer (the security company) and the managers and owners of the housing complex.  Many of the defendants were insolvent or judgment proof.  There was, however, an applicable insurance policy issued by Home Insurance Companies (Home Insurance).[4]

In July 1991, Ms. Michell, without petitioner's knowledge or consent, settled the case against the defendants for $250,000, and a check was issued by Home Insurance to the "Trust Account of Ganong & Michell, as Trustees For Wale O. Osijo" in the amount of $250,000 on July 26, 1991.  In 1993, petitioner was asked by Ms. Michell to sign a settlement distribution statement reflecting the following:

| | |
|---|---|
| Funds received | $250,000.00 |
| Less legal fees | 112,500.00 |
| | 137,500.00 |
| Costs advanced[1]   $4,807.10 | |
| | |
| To Be Paid | |
| Department of Industrial Relations | |
|   Uninsured Employers Fund | $10,000.00 |
| Balance due client | 122,692.90 |
| Interest on account | 8,844.15 |
|   Total | 131,537.05 |

[1] Details of the costs advanced are omitted.

---

[4]  As part of the litigation, petitioner signed a "Plaintiff's Response To Form Interrogatories (set. #1)", which included the following response: "Question 2.6(a) Self-employed tax and management consultant, 4516 East Belmont Avenue, Fresno California 93702."

Petitioner refused to sign that document and disputes its accuracy. However, petitioner did receive from Ms. Michell a check for $131,537.05 sometime during 1993. Petitioner began to pursue legal remedies against Ms. Michell in the California courts for legal malpractice. Part of those measures are still pending. Suffice it to say that, at the time of trial before this Court, it has been held that Ms. Michell had breached her contract with petitioner and had claimed excessive fees.

Beginning in 1993, several family members and friends came to petitioner to have their 1992 Federal income tax returns prepared by him because they knew petitioner had a strong background in business administration and taxation. Petitioner credibly testified that he prepared no more than 10 tax returns in 1993. Petitioner stated that he may have charged as much as $200 per return, but he is not sure whether he collected from everyone the money owed to him. In 1994, petitioner prepared between 10 and 15 returns, including one for a friend whom he charged $450.

### Discussion

The Commissioner's determination in the notice of deficiency is presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Where a taxpayer has not filed a tax return, respondent may reconstruct a taxpayer's unreported income. Holland v. United

States, 348 U.S. 121 (1954).  The reconstruction of income must be reasonable in light of all of the surrounding facts and circumstances.  Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970).

For the taxable years 1989 through 1992, we find that petitioner was not engaged in any income-producing activity.  Respondent's reliance upon an answer to an interrogatory filed in a lawsuit (see supra note 4) is misplaced.  While petitioner may have identified himself in the answer to an interrogatory as a tax management consultant, calling oneself that does not necessarily indicate that he had in fact engaged in such activity.  We also note that the actual interrogatory that petitioner answered was not presented to the Court, and thus we are unaware of the full context of petitioner's answer.

On the other hand, petitioner has satisfactorily established that he was not engaged in income-producing activity during 1989 through 1992.  We find that during that time petitioner was recovering from serious gunshot wounds, attending university, and/or pursuing his legal remedies.  Petitioner received nontaxable income from various agencies of the State of California which he used to support himself.[5]  Accordingly, for

---

[5]  Respondent does not contest the nontaxability of those proceeds.

taxable years 1989 through 1992, we hold that petitioner did not fail to report income.

For taxable year 1993, respondent determined, inter alia, that petitioner received interest income in the amount of $8,862, of which $18 is interest earned on funds held at Glendale Federal Bank and $8,844 is interest that had accrued on the "settlement" funds held by Ms. Michell. Petitioner concedes the $18 amount, but contests the fact that he received interest income from Ms. Michell. Allegedly, when Ms. Michell received the $250,000 settlement check from Home Insurance, she deposited it into an interest-bearing trust account. The record before us, however, does not include any details of the account, including the terms of the trust or in which years and in what amounts said interest was earned.

Petitioner currently is contesting the validity of the settlement Ms. Michell arranged on his behalf. The California Court of Appeals has held that Ms. Michell is entitled to legal fees of only $100,000[6], not the $112,500 she retained. Petitioner's claim against Ms. Michell for breach of fiduciary duty remains unresolved.

Respondent has not offered any evidence in support of the determination that petitioner had unreported interest income of $8,844 in 1993. The purported distribution statement was offered

---

[6] This is 40% of the $250,000 settlement amount.

by petitioner as part of his presentation of the sequence of events pertaining to his litigation travails. The contents of that document are disputed by petitioner and are pure hearsay. Ms. Michell was not called as a witness to support its contents, and it does not lend persuasive support to respondent's determination. Thus, in view of petitioner's credible denial that he received such interest, we hold that petitioner did not receive any taxable interest income from his attorney or any trust in 1993.

Respondent also determined for the 1993 year that petitioner earned Schedule C income of $3,750 resulting from the preparation of 25 tax returns at $150 per return. We conclude, based upon petitioner's testimony, that petitioner had $2,000 of Schedule C income, resulting from the preparation of 10 tax returns at $200 apiece. Petitioner has failed to present any books and records of his 1993 tax preparation business. Accordingly, he has failed to prove which of his clients, if any, failed to pay his fee. In addition, petitioner claims that he had legitimate business expenses to offset that income. However, he has failed to substantiate any business expenses. While our conclusions herein result in no taxable income for petitioner for 1993 (as petitioner's income for the year is less than the combined amount of his personal exemption and standard deduction), petitioner

will be liable for self-employment tax, which shall be determined under Rule 155.

For taxable year 1994, respondent determined that petitioner had interest income of $10, which petitioner does not contest, nonemployee compensation of $2,959, which respondent concedes, and Schedule C self-employment income of $4,050, allegedly fees resulting from the preparation of 25 tax returns, 24 at $150 each and 1 at $450. We conclude that petitioner had 15 clients for whom he prepared income tax returns, 14 at $200 apiece (totaling $2,800) and 1 at $450, resulting in unreported Schedule C self-employment income of $3,250. Again, petitioner has not substantiated that he had incurred business expenses in deriving his Schedule C income, and we shall not allow any such expenses. While petitioner does not have taxable income for 1994, he has self-employment income upon which self-employment tax is owed, which shall be computed under Rule 155.

Lastly, we consider respondent's determination that petitioner was liable for additions to tax under section 6651(a)(1) for the years 1989 through 1994. In view of our holding that petitioner had no taxable income for the years 1989 through 1992, it follows that there is no underpayment to which a section 6651(a)(1) addition to tax would be applicable. Accordingly, respondent is not sustained on this issue for those years.

For taxable years 1993 and 1994, however, we have concluded that petitioner had income from self-employment in the amounts of $2,000 and $3,250, respectively. Section 6017 provides that every individual who has self-employment income of $400 or more shall file a return with respect to self-employment tax. Section 1.6017-1(a)(1), Income Tax Regs., provides, in part:

> A return is required under this section if an individual has self-employment income, as defined in section 1402(b), <u>even though he may not be required to make a return under section 6012 for purposes of the tax imposed by section 1 or 3</u> [i.e. income tax]. Provisions applicable to returns under section 6012(a) shall be applicable to returns under this section. [Emphasis added.]

Petitioner was a tax return preparer and should have been aware of these provisions. Moreover, other than indicating that he was busy representing himself in his litigation against Ms. Michell (with substantial travel and research time required) petitioner has offered no reasonable excuse for his failure to file returns for 1993 and 1994. He was able to prepare returns for others during this period and could have found the time to prepare his own. Upon due consideration of the entire record, we conclude that petitioner is liable for additions to tax under section 6651(a)(1) for the years 1993 and 1994.

<u>Decision will be entered</u>

<u>under Rule 155</u>.