JAMES E. MOWEN AND DIANE M. MOWEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mowen
Docket No. 18501-84.
United States Tax Court
T.C. Memo 1986-25; 1986 Tax Ct. Memo LEXIS 581; 51 T.C.M. (CCH) 314; T.C.M. (RIA) 86025; January 22, 1986. James E. Mowen, for the petitioners. Robert Miller, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency for the calendar year 1980 against petitioners for income tax and self-employment tax in the amount of $58,392, plus addition to tax under section 6653(b) [1] in the amount of $29,196. We are called upon to determine *582 whether petitioners understated their taxable income in the year 1980, resulting from their dealings in precious metals in that year, and whether any such understatement of their income was due to fraud within the meaning of section 6653(b). FINDINGS OF FACT Petitioners James E. Mowen (hereinafter "James") and Diane M. Mowen (hereinafter "Diane"), husband and wife, filed a joint income tax return for the year 1980. At the time of filing of the petition herein, petitioners were residents of Hagerstown, Maryland. During 1980, James had full time employment with an undisclosed outside employer, while Diane, who had one infant child and another "on the way," was apparently not employed. [2] In August 1980, James, assisted in part by Diane, began to engage in buying and selling precious metals, in the form of coins, jewelry and other items containing gold and silver. This activity apparently continued until the end of January 1981, when it was terminated. In August, September *583 and the early part of October 1980, James placed advertisements in a local newspaper in Cumberland, Maryland, advertising that he would pay cash for silver and gold coins, or other articles containing gold and silver. In this period, he made 26 round trips by automobile to Cumberland, Maryland, to carry on this enterprise, staying for various periods of time and purchasing items which were offered to him. The distance from Hagerstown to Cumberland is 68 miles. In such travel, James incurred automobile expenses of $707.20. In October 1980, he shifted his buying activities back to Hagerstown, Maryland, placing similar advertisements in the local newspaper there, and continued this activity through January of 1981. All purchases were made in cash. The purchases made by James, whether in Cumberland or in Hagerstown, were periodically taken to the Gaithersburg Coin Exchange Inc., of Gaithersburg, Maryland, by James (or his brother Mark Mowen, on James' behalf) and were sold. Twenty such round trips by automobile were made in 1980. The distance from Hagerstown to Gaithersburg is *584 49 miles. In his travel between Hagerstown and Gaithersburg, James incurred automobile expenses of $392.00. In advertising for the purchase of coins and precious metals in 1980, James incurred expenses of $9,473. James had gross receipts from the sale of coins and precious metals to the Gaithersburg Coin Exchange, Inc. in the year 1980 of $124,906. Diane kept a record of purchases of coins, gold and silver in a hard cover notebook, which was stored in the basement of petitioners' home, together with other records of the enterprise. Prior to the commencement of this case, such records had become mildewed and watersoaked because of wet conditions in the basement. All such records were destroyed because of their condition, but Diane made a handwritten copy of the record of purchases before destroying that record, showing an itemized list of each item purchased, a description of the item and the price paid therefor. Although this record purported to cover the entire period of James' operations -- August 1980 through January 1981 -- no dates were shown as to individual purchases. The total cost of goods sold for the period was $140,219.60. The cost of goods sold in 1980 was $116,849.66. *585 At the end of the year 1980, petitioners determined that they had suffered a net loss from their precious metals operation. No gross receipts or gross income from James' dealings in precious metals were disclosed in petitioners' 1980 return. Likewise, no deductions or net loss from these operations were claimed. Upon audit, and in the absence of what he considered to be adequate records, respondent determined that the entire amount of $124,906 of gross receipts, as above, constituted unreported taxable income, and accordingly determined a deficiency of tax in 1980 of $58,392, including self-employment tax in the amount of $230. Respondent further determined that petitioners' omission of the precious metals activity from their joint return was fraudulent within the meaning of section 6653(b), and determined a 50-percent addition to the tax accordingly. Petitioners suffered a net loss from their precious metals operations in 1980. OPINION Our first task in this case is to determine whether petitioners had unreported taxable income in 1980 from their precious metals operation in the amount as determined by respondent, or in any amount. Respondent's determination of this *586 matter in his statutory notice is presumptively correct, and petitioners bear the burden of proof to show error therein. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Furthermore, where a taxpayer refuses or fails to supply records for examination with respect to his income, respondent is given great latitude and may use any reasonable method to reconstruct income. Section 446(b); Giddio v. Commissioner,54 T.C. 1530 (1970). In many respects, the record in this case represents a failure of proof by petitioners. The amount of James' gross receipts from the precious metals business was established by stipulation of the parties, and, at trial, respondent conceded and stipulated that James had advertising expenses in connection with the precious metals operation in the amount of $9,473. Beyond this, however, nothing was agreed, and the burden was on petitioners to prove the cost of goods sold and any related and allowable deductions with respect to the precious metals operation. With the exception of two items, petitioners have failed in their necessary burden of proof. Petitioners testified as to the costs of maintaining a display room *587 in a hotel in Cumberland for the purpose of purchasing coins and gold and silver, as well as the cost of a "store front" in Hagerstown, maintained later in the period for the same purpose. Although they testified as to the costs of these rentals, such testimony was completely unsupported by any corroborative evidence. Likewise, one or both petitioners testified as to advertising costs in radio spot commercials, but neither one was able to come up with a dollar amount of such costs or any other record to support the claim. Likewise, although petitioners testified in a general way as to the cost of supplies, equipment and the like (some of which may have been capital expenditures) which were necessary for the conduct of the precious metals operation, neither their testimony nor any corroborative evidence was offered to give us an idea of the amount of such expenses. While we are satisfied that James incurred some expense in display space rentals both in Cumberland and Hagerstown, and may well have incurred advertising expense on the radio, we cannot pick a figure out of thin air; we must have some basis to go on. Nor can respondent be faulted for failing to make allowance for any *588 such deductible items, in the absence of any evidence to support them. If respondent's adjustments are inaccurate because the taxpayer had no books or failed to produce them, the taxpayer must suffer the consequences. Figueiredo v. Commissioner,54 T.C. 1508 (1970), affd. by unpublished order (9th Cir. 1973); Estate of Mason v. Commissioner,64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). On the other hand, where the taxpayer carries his burden of proof to show that certain expenses were in fact incurred, although the record may be less than clear as to the exact amount thereof, we can, in our discretion, make such allowances as are reasonable under the circumstances. As the Court of Appeals said in Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930), affg. and remanding 11 B.T.A. 743 (1928): Absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. * * * The record herein does give us some basis for making findings *589 herein with regard to James' cost of goods sold and his automobile expense. There was stipulated and admitted into evidence a record of purchases made by James during the course of the precious metals operation. [3] The testimony of both petitioners was that this purchase record was not an original document, but was copied by Diane from the original, which had become mildewed and watersoaked so as to be difficult to read, and was thereafter destroyed. Respondent complains of this on brief, as not being a credible or contemporaneous document, but we are satisfied from petitioners' testimony that the original was not lost or destroyed due to petitioners' bad faith, and that it is no longer available. We are further satisfied that the document in evidence is an accurate copy of the original document, and therefore was properly admissible in evidence. Rule 1004, Fed. R, Evid.
The document *590 itself is less than perfect. Although it gives itemized descriptions and costs for each item purchased, and although we can assume that the record was keep chronologically, no dates are given by which we can determine those purchases which were made in the months of August through December 1980, as opposed to those made in January of 1981, a year which is not before us. Since the total span of time involved is six months, however, and since only one month of those six was outside the year 1980, we will apply our discretion under Cohan by allocating the purchases equally over the six months. This means that only five-sixths of the total amount of purchases, constituting James' cost of goods sold, or $116,849.66, should be credited as costs of goods sold in 1980. As to automobile expenses, the parties stipulated the mileage between Hagerstown and Cumberland on the one hand, and Hagerstown and Gaithersburg on the other hand. Using the record of advertisements placed in the Cumberland newspaper as a basis for the times when James would go to Cumberland to purchase precious metals (the dates of the newspaper advertisements were introduced into evidence) we have determined that *591 26 such roundtrips were made by automobile, which under the optional method of computing automobile travel expense of $ .20 per mile, as in effect in 1980, see section 162 and Rev. Proc. 80-32, 1980-2 C.B. 767, produces an automobile travel cost of $707.20. We consider that such cost is not allowable as a deduction herein, however, since it constitutes nondeductible commuting expense between James' home in Hagerstown and his place of business in Cumberland. Sections 1.162-2(e) and 1.262-1(a)(5), Income Tax Regs. On the other hand, the trips from Hagerstown to Gaithersburg to sell the precious metals cannot be considered a commuting expense and should be allowable. Based upon the dates of the checks issued by the Gaithersburg Coin Exchange, Inc. in payment for precious metals when they were brought in, we have determined that 20 such roundtrips were made, and the parties have stipulated that the distance was 49 miles each way. Using the same $ .20 per mile allowance, as above, we feel that petitioners are entitled to a deduction of $392 for such travel expense. Based upon the stipulated amount of James' gross receipts, and the allowable expense, as we have found it *592 to be herein, the results are as follows: Gross Receipts
$124,906.00
Less: Cost of goods
Sold
116,849.66
Gross Income
$8,056.34 Less Allowable Expenses: Advertising expense
$9,473.00
Auto expense
392.00
9,865.00 Net Income (Loss)
($1,808.66)
It thus results that, even allowing petitioners the few offsets for which there is some basis in this record, under the standards of Cohan, the final outcome is still that James had a net loss in his precious metals operation for 1980 and, given the type of deductions which we have allowed, this would be true whether James is considered to have been engaged in a trade or business or not. [4] Sections 161, 162, 183(b)(2). There can be no question that petitioners should have reported their gross receipts, their gross income and their allowable deductions from the precious metals operations in their 1980 return. Their failure to do so was improper but, as we have found, the net result is still that there was no unreported taxable income from this source for 1980. So far as respondent is concerned, *593 therefore, it is a case of damnum absque injuria. Since there was no unreported taxable income, there can be no deficiency of tax; and without an underpayment of tax, no additions to tax under section 6653(b) are applicable. Decision will be entered for petitioners.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. James' wages were reported in petitioners' joint income tax return, and are not here in issue.↩
3. Although stipulated into evidence as a joint exhibit, respondent made clear to the Court at trial, and the Court accepted, that respondent was stipulating only to the document as petitioners' exhibit, and was not agreeing to the truth of the contents thereof.↩
4. Petitioners did not claim a net operating loss from the precious metals operation for 1980.↩