T.C. Memo. 1998-169

UNITED STATES TAX COURT

BRADLEY G. BJELK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14849-95.                    Filed May 11, 1998.

Bradley G. Bjelk, pro se.

<u>Lawrence H. Ackerman</u>, for respondent.

MEMORANDUM OPINION

GALE, <u>Judge</u>:  Respondent determined the following
deficiencies in, and additions to, petitioner's Federal income
taxes:

| Year | Deficiency | Addition to Tax Sec. 6651(a)[1] | Sec. 6654(a) |
|------|-----------|-------------------------------|--------------|
| 1988 | $12,909 | $2,802 | $705 |
| 1989 | 53,816 | 13,404 | 3,623 |
| 1990 | 9,928 | 2,482 | 655 |
| 1991 | 58,170 | 14,543 | 3,347 |
| 1992 | 10,137 | 2,534 | 440 |
| 1993 | 17,712 | 4,428 | 742 |

After concessions by both parties, we must decide the following issues:

(1) Whether the notices of deficiency in this case were valid, granting us jurisdiction.  We hold that the notices were valid and that we have jurisdiction.

(2) Whether the notices of deficiency were arbitrary and erroneous, which would cause them to lose their presumption of correctness.  With the exception of $35,873 of unreported income determined in the notice for 1993, we hold that the notices were not arbitrary and erroneous and that they are entitled to the presumption of correctness.

(3) Whether petitioner is liable for the deficiencies in tax as determined by respondent.  We hold that petitioner is liable to the extent discussed below.

(4) Whether petitioner is liable for the additions to tax as determined by respondent.  We hold that petitioner is liable to the extent discussed below.

---

[1] Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Some of the facts have been stipulated and are so found.  We incorporate by this reference the stipulation of facts, first supplemental stipulation of facts, and attached exhibits.

The petition in this case was timely filed on August 7, 1995.  At the time of filing the petition, petitioner resided in DeKalb, Illinois.

At the calendar call of this case, petitioner filed a motion for summary judgment, asking the Court to "deny any reassessments of taxes, interest, and penalties" for the years in issue on the basis that respondent did not mail the notices of deficiency to his correct address.  We treat this motion as a motion to dismiss for lack of jurisdiction.  The Court took the motion under advisement, and the parties have addressed it on brief.  We now deny petitioner's motion.

Petitioner attached several copies of documents to his briefs as documents in support of his motion.  These documents include copies of cover pages of 30-day letters respondent sent to petitioner dated February 8, 1995, and a copy of a letter respondent sent to petitioner dated June 2, 1995.

Petitioner did not file tax returns for any of the years in issue.  Separate notices of deficiency, each covering one of the years at issue, were mailed May 9, 1995, and addressed to petitioner at 645 North 11th Street, DeKalb, Illinois (the 11th Street address), a house where petitioner formerly resided but which had been sold by him in 1989.  At the time the notices were

mailed, petitioner resided at 120 South 9th Street, DeKalb, Illinois (the 9th Street address). Prior to the mailing of the notices, respondent had mailed 30-day letters addressed to petitioner at the 9th Street address.

In response to the 30-day letters, petitioner filed an initial petition with this Court on May 1, 1995, prior to the issuance of any notices of deficiency. On May 9, respondent mailed the notices of deficiency to the 11th Street address, as previously indicated. On June 2, respondent sent petitioner a letter at the 9th Street address, advising (i) that his initial petition would have to be dismissed for lack of jurisdiction because it was filed before the notices of deficiency were issued, (ii) that the notices of deficiency had been issued on May 9, and (iii) that he had until August 7 to file a petition in response to the notices of deficiency. Petitioner admits receiving this letter. On August 7, 1995, the petition that initiated this case was filed, in which petitioner states that he "disagrees with the tax deficiencies for the years 1987-1988-1993 [sic] as set forth in the Notice of Deficiency dated May 9, 1995, a copy of which is lost." On August 18, the Court dismissed the May 1, 1995, petition. On September 27, 1995, respondent served on petitioner, by mailing to him at the 9th Street address, a copy of his answer in this case, to which were attached copies of the notices of deficiency for each year at issue.

Our jurisdiction in this case depends on respondent's having issued valid notices of deficiency. Frieling v. Commissioner, 81 T.C. 42, 46 (1983). Petitioner argues that the 9th Street address was his last known address and that because the notices were not mailed to the 9th Street address, they are invalid. Proper mailing of a notice of deficiency to the taxpayer at his last known address is sufficient to validate the notice whether or not the taxpayer actually receives it. Sec. 6212(b)(1); see Frieling v. Commissioner, supra at 48, 52, and cases cited therein. It is well established, however, that even where the Commissioner mails a notice to an address other than the taxpayer's last known address, if the taxpayer receives the notice within the period for filing a timely petition and in fact files a timely petition, the Court has jurisdiction. Frieling v. Commissioner, supra at 53.

Further, oral notice that a notice of deficiency has been issued may be sufficient for jurisdictional purposes if the taxpayer receives such notice in time to file, and does file, a timely petition, even if the written notice of deficiency is not sent to the last known address and the taxpayer does not receive such written notice until after filing. Zaun v. Commissioner, 62 T.C. 278 (1974). In Zaun we held that a notice of deficiency was valid for jurisdictional purposes, even assuming it was not sent to the last known address, where the taxpayers received oral

notice of the deficiency in time to file, and did file, timely petitions, notwithstanding that they did not receive copies of the deficiency notices until service of respondent's answer in the case.  Id. at 280.

In the instant case, we find that petitioner received, in time to file a timely petition, actual notice that the notices of deficiency had been issued.  Respondent's June 2, 1995, letter to petitioner, which he admits receiving, informed him that notices of deficiency had been issued on May 9, and petitioner filed a timely petition.  That petitioner could state the correct date of issuance of the deficiency notices (May 9, 1995) in his petition confirms his awareness of them.  As to petitioner's receipt of the written notices themselves, petitioner has stipulated receiving them but not to the date on which they were received. On brief he admits to receiving copies on August 28, 1996, at a conference with respondent's counsel.  We find that he received copies no later than when served with respondent's answer, which was mailed to him at the 9th Street address on September 27, 1995.  In any event, because petitioner received notice of the issuance of the notices of deficiency in time to file a timely petition, and did file a timely petition, we have jurisdiction. Zaun v. Commissioner, supra.

Because petitioner failed to present books and records, respondent had authority to compute petitioner's income by whatever method clearly reflects income.  Sec. 446; Meneguzzo v.

Commissioner, 43 T.C. 824, 831 (1965).[2]  Petitioner argues that the notices of deficiency in this case were arbitrary and erroneous, in which case they would not be entitled to the presumption of correctness ordinarily accorded to deficiency notices.  Pittman v. Commissioner, 100 F.3d 1308, 1317 (7th Cir. 1996), affg. T.C. Memo. 1995-243.  We disagree with respect to the notices of deficiency for every year in issue except 1993.

For each of the years in issue except 1992, respondent determined that petitioner had (i) specific items of income from identified sources, based on information reported by third parties on Forms W-2 or Forms 1099; and (ii) a specified amount of "unreported income".  The notice for 1992 determined only "unreported income" and did not determine any income from identified sources.  For each item of income from identified sources, the notice provided an explanation of the source.  The "unreported income" item was explained in each of the notices as follows:  "We have computed your unreported taxable income using reasonable estimates based on known sources of income and

_____

[2] Petitioner contends that he had maintained records of his business operations but that they were lost in a flood at his residence in July 1996.  Petitioner has offered no corroborating evidence of this contention, and we reject it as unsubstantiated. Petitioner provided noncredible or contradictory testimony with respect to other important aspects of this case.  For example, he contended that he did not earn more than $5,535 in 1990, despite representing in a prior court proceeding that his annual income at this time was $18,000.  Moreover, although he testified that he had submitted a claim regarding the flood damage with the Federal Emergency Management Agency, he produced no documentary evidence of such claim.

deductible expenses."  Petitioner has stipulated to most of the specific items of income from identified sources as determined by respondent.[3]  Petitioner also admits that he received unreported income in some of the years, but in lesser amounts than determined by respondent, and denies receipt of unreported income in others.  Petitioner contends that respondent's determinations of unreported income are arbitrary and erroneous.

In general, respondent's determinations in the notices of deficiency are entitled to a presumption of correctness, and petitioner has the burden of proving them incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, the determinations may lose their presumption of correctness if they are arbitrary and erroneous.  Pittman v. Commissioner, supra at 1317.  In order to maintain the presumption of correctness, respondent's determinations need only have some minimal factual predicate.  Id.  The determinations need only be rational, not flawless, and to vitiate the presumption of correctness, a taxpayer must show that the determinations were arbitrary and erroneous, not merely erroneous.  Id.  To establish the required factual predicate, it is ordinarily sufficient for the Commissioner to show that the taxpayer was engaged in an income-producing activity for each year in which it has been determined

---

[3] With respect to respondent's determination of income from real estate sales in 1989 and 1991, petitioner has stipulated only to the amount of the gross sales proceeds in each transaction.

that the taxpayer had unreported income. Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374, 1378 (7th Cir. 1990), affg. Malicki v. Commissioner, T.C. Memo. 1988-559.

Respondent has established, except with respect to 1993, that petitioner was engaged in income-producing activities beyond those that can be attributed to the income from identified sources to which petitioner has stipulated. For taxable years 1988, 1989, and 1990, petitioner has stipulated that he operated a business known as "The Crazy Horse Saloon" (the Crazy Horse Saloon) and has admitted receiving income from this business in each year, although in lesser amounts than respondent determined as unreported income.

With respect to 1991 and 1992, we are satisfied that the evidence establishes that petitioner worked as manager of Jiordano's Pizza (Jiordano's) in Dekalb, Illinois. Petitioner denied that he ever worked at Jiordano's, even when confronted with 1991 and 1992 DeKalb telephone directories listing him as the manager of the establishment. Moreover, respondent produced a witness who was a cable television installer and who testified that he made an installation at Jiordano's in 1991 or 1992, that petitioner was listed as the contact person on the work order for such installation, that petitioner and his sons were the only persons present in the establishment and they entered areas not normally accessible to customers, and that petitioner paid for the installation. In our view, petitioner's denial that he

worked at Jiordano's despite compelling evidence to the contrary, without further explanation, undermines his credibility, and we accordingly consider all of his other testimony with skepticism. For 1992, petitioner also testified that he delivered a small number of summonses for attorneys and was compensated for doing so.

Thus, it has been demonstrated for the years 1988 through 1992 that petitioner was engaged in income-producing activities in addition to those connected to the income determined in the notices from identified sources. Accordingly, respondent's determinations that petitioner had unreported income from unidentified sources in those years are presumptively correct, and petitioner bears the burden of demonstrating that they are erroneous.

With respect to 1993, however, there is no evidence that petitioner was engaged in income-producing activity beyond his work for Cantel Communications. In the deficiency notice for 1993, respondent determined that petitioner received nonemployee compensation from Cantel Communications in the amount of $18,018.98 and "unreported income" of $35,873. Petitioner has stipulated to the Cantel Communications income, but denies the unreported income. It has been stipulated that petitioner sold the property where the Crazy Horse Saloon was located in 1991, there is no evidence that petitioner worked as manager of Jiordano's beyond 1992, and there is no evidence that petitioner

delivered summonses or engaged in some other income-producing activity in 1993. In the absence of any evidence that petitioner was engaged in income-producing activity beyond his work for Cantel Communications, respondent has not demonstrated any factual predicate for the unreported income of $35,873 in 1993, and accordingly the determination thereof is not presumptively correct.

Having decided that the notices of deficiency, with one exception, are presumptively correct, we turn now to an evaluation of the evidence pertaining to the disputed amounts of unreported income in each year. The deficiency notices state that petitioner's unreported income was computed "using reasonable estimates based on known sources of income". While the notices make no reference to the Bureau of Labor Statistics (BLS), respondent asserts on brief that petitioner's unreported income in each year was reconstructed through the use of BLS data. Respondent cites Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970), where we approved the use of BLS statistics to reconstruct income, for the proposition that it is not "arbitrary for the Commissioner to determine that the taxpayer had income at least equal to the normal cost of supporting his family." Based on this reliance on Giddio, and in the absence of any further explanation of the BLS computation, respondent's position appears to be that BLS data were used in the deficiency notices to establish petitioner's normal cost of living; i.e., that the

"unreported income" item in each notice of deficiency represents petitioner's cost of living during the respective year in issue.[4] It is not clear, however, that the "unreported income" amounts determined by respondent constitute a reasonable approximation of petitioner's cost of living in years where petitioner has stipulated or admitted to income from other sources in amounts that may have been used to meet his cost of living.[5]  With these considerations in mind, we review the evidence for each year.

1988

The parties have stipulated that petitioner received wages of $14,239 and interest income of $13 in 1988.  It has also been stipulated that in 1987 petitioner purchased business property in Cortland, Illinois (the Crazy Horse property), and operated the Crazy Horse Saloon on these premises in 1987 and 1988.  In connection with the trial of this case, petitioner completed and signed a 1988 Federal income tax return, on Schedule C of which

---

[4] We note that respondent in this case did not provide the supporting detail with respect to the BLS reconstruction that was provided by the Commissioner in Giddio v. Commissioner, 54 T.C. 1530 (1970).

[5] Respondent also relies on Diercks v. Commissioner, T.C. Memo. 1996-345, a case in which we sustained determinations of unreported income based on reconstructions from BLS data. However, Diercks is distinguishable from some of the years at issue in the instant case.  In Diercks, the taxpayer denied receiving income greater than $500 in each year, despite proof of expenditures for living expenses that far exceeded that amount. Here, petitioner has stipulated or admitted to income in some years that could be sufficient to meet his living expenses.

he listed his "net profit"[6] from the Crazy Horse Saloon as $15,748. This representation is an admission by petitioner. On December 31, 1987, petitioner submitted a financial statement to a bank in which he represented that his annual income was $20,000.

Petitioner had a wife and two children and testified that he provided their support in 1988. It has been stipulated that petitioner paid mortgage interest totaling $16,253 in 1988, of which $9,968 related to the Crazy Horse property and $6,285 is unspecified. Based on the entire record, we find that the $6,285 in mortgage interest related to petitioner's residence at the 11th Street address.

Petitioner has stipulated or admitted to income totaling $30,000 in 1988. Petitioner denies any additional unreported income beyond the $15,748 in net profit from the Crazy Horse Saloon. Respondent determined unreported income of $29,147, in addition to other income determinations of $14,252, for a total of $43,399, and apparently takes the position that petitioner's cost of living must have required income in that amount. In the absence of any BLS evidence regarding petitioner's cost of living, we believe $30,000 in total income was adequate to meet the cost of living of petitioner and his family. We conclude on

---

[6] On the Schedule C, petitioner listed "net profit" only, without making any entries for gross receipts, cost of goods sold, or deductions.

this record that respondent's determination that petitioner had unreported income of $29,147 is erroneous. We accordingly sustain respondent's determination of such unreported income only to the extent of $15,748; this is in addition to the unreported wages of $14,239, and the unreported interest income of $13, to which the parties have stipulated. In addition, since we have found that petitioner paid home mortgage interest of $6,285,[7] petitioner is entitled to a deduction in that amount, although respondent's allowance of the standard deduction in the notice must be adjusted accordingly. Petitioner has not substantiated any other Schedule A deductions.

1989

The parties have stipulated that petitioner received wages of $1,944 in 1989.

The parties have further stipulated that petitioner sold real property located at the 11th Street address in 1989 for a gross sales price of $69,500.[8] In connection with the trial of this case, petitioner completed and signed a 1989 Federal income tax return on which he claimed certain expenses of sale of this

---

[7] We make no provision for the $9,698 in mortgage interest that the parties stipulated petitioner paid with respect to the Crazy Horse property because petitioner admitted to a "net profit" estimate from the Crazy Horse Saloon, which would have been net of mortgage interest expense.

[8] Although the notice of deficiency for 1989 determined income from real estate sales in the amount of $139,000, respondent now concedes that the gross sales price received by petitioner was $69,500 rather than $139,000.

property and a basis of $55,550.  Petitioner has provided no substantiation of the claimed sales expenses.  With respect to the claimed basis, we observe that respondent offered into evidence two personal financial statements dated December 31, 1987, and February 16, 1989, that petitioner submitted to a bank to obtain loans.  In both statements, petitioner represented that the property at the 11th Street address was acquired in 1983 at a cost of $57,000.  We find sufficient corroboration that petitioner had a basis in the property of at least $55,500.  We accordingly find that his net gain on the sale of the 11th Street property was $13,950 ($69,500 gross sales price less $55,550 basis).  We therefore sustain respondent's determination of income from real estate sales in the amount of $13,950 only.

It is stipulated that petitioner continued to operate the Crazy Horse Saloon in 1989.  With respect to his income from this business, petitioner filed returns for retailers' occupation and related taxes for the Crazy Horse Saloon with the Illinois Department of Revenue, in which he reported total receipts for 1989 of $30,591.  This figure was also represented by petitioner as his gross receipts from the Crazy Horse Saloon on Schedule C of the 1989 Federal income tax return previously noted.  Both representations of gross receipts constitute admissions by petitioner.  Petitioner listed various deductions on the Schedule C in computing net profit from the Crazy Horse Saloon, but has provided no substantiation for any of them except mortgage

interest of $9,689, to which the parties have stipulated. Accordingly, we find that petitioner had unreported income from the Crazy Horse Saloon in 1989 of at least $20,902 ($30,591 gross receipts less $9,689 mortgage interest).

Petitioner separated from his wife on or about December 1, 1989, after which they did not live together. He testified that he moved in with his mother, which his former wife as well as an employer corroborated. We accordingly find that petitioner moved in with his mother in December of 1989. Petitioner testified that both he and his wife provided support for the family in 1989. In a February 16, 1989, personal financial statement submitted to a bank to obtain a loan, petitioner represented that his annual income was $20,000. The parties have stipulated that petitioner paid mortgage interest of $15,931, of which $9,689 related to the Crazy Horse property. Based on the entire record, we find that the remainder, $6,242, related to petitioner's residence at the 11th Street address.

The income that has been stipulated, or that we have found, totals $36,796 in 1989, consisting of $1,944 in wages, $13,950 from a real estate sale, and $20,902 in unreported income from the Crazy Horse Saloon. Respondent's determination of "unreported income" from an unidentified source in the amount of $30,492 would increase petitioner's income another $9,590 to $46,386. In the absence of any BLS evidence regarding petitioner's cost of living, we believe that $36,796 was adequate

to meet the cost of living of petitioner and his family.  We conclude on this record that respondent's determination of unreported income of $30,492 is erroneous.  We accordingly sustain respondent's determination of unreported income only to the extent of $20,902.  In addition, since we have found that petitioner paid home mortgage interest of $6,242 in 1989, petitioner is entitled to a deduction in that amount, although respondent's allowance of the standard deduction in the notice of deficiency must be adjusted accordingly.  Petitioner has not substantiated any other Schedule A deductions.

1990

The parties have stipulated that petitioner received nonemployee compensation of $1,035 from J&K Developers, Inc., in 1990.  It has also been stipulated that petitioner operated the Crazy Horse Saloon "during 1990".  Petitioner testified that he ceased operations on July 1, 1990.  Other evidence in the record provides some support for this assertion.[9]  In a personal financial statement dated March 29, 1990, submitted to a bank to obtain a loan, petitioner represented that his annual income was

---

[9] The parties have stipulated that the Crazy Horse property was sold in 1991 and have not stipulated that any operations were conducted in that year.  The only liquor license granted to the Crazy Horse Saloon that is in evidence carries an expiration date of Apr. 30, 1990.  No State tax returns for the business beyond 1989 are in evidence.  The parties have stipulated that petitioner paid mortgage interest related to the Crazy Horse property of $4,360 in 1990, which is less than half the amount paid in each of the 2 preceding years.

$20,000, which is an admission. In connection with divorce proceedings on August 28, 1990, petitioner signed a separation agreement representing that his annual income was $18,000 and testified under oath that his current occupation was "machine operator". Yet on a 1990 Federal income tax return completed and signed by petitioner and submitted in support of his position at trial, he states that his gross income for 1990 was $5,535, consisting of the $1,035 in compensation from J&K Developers and an estimated net profit of $4,500 from the Crazy Horse Saloon.[10] Petitioner has not accounted for his admitted $20,000 or $18,000 annual income in 1990 or, with the possible exception of the income from J&K Developers, any income from his work as a machine operator. We do not believe that gross income of $5,535 was sufficient to meet petitioner's cost of living, even accepting his contention that he lived with his mother during 1990. We note in this regard that petitioner assumed child support obligations of $100 per week, plus one-half of medical expenses, as well as a $2,000 debt, in the divorce proceedings. We conclude that no error has been demonstrated in respondent's determination of $32,285 in unreported income for 1990 and accordingly sustain it.

1991

---

[10] Petitioner reported only a net profit figure on Schedule C of the submitted 1990 return, without a supporting computation, adding the notation that the figure represented one-half of his net profits from the business in the preceding year.

The parties have stipulated that petitioner received $14 in interest income in 1991.

The parties have further stipulated that petitioner sold the Crazy Horse property in 1991[11] for a gross sales price of $155,000. Respondent determined in the deficiency notice that petitioner had income in that amount from real estate sales. Petitioner testified that his basis in the property was "$186,000 or $183,000" but has provided no evidence to corroborate that statement. Respondent, however, introduced into evidence a personal financial statement prepared and signed by petitioner on March 11, 1988, in which petitioner represents that his cost was $90,000 for real property at "4519 Route 38 East" that was acquired in 1987. Since the parties have stipulated that the Crazy Horse property was located at the foregoing address and was purchased by petitioner on July 31, 1987, we accept the $90,000 figure as petitioner's cost for the Crazy Horse property. Assuming that the property was 31.5-year property and was placed in service on or about July 31, 1987, we estimate that petitioner would have been entitled to depreciation of as much as $11,190 during the period the property was held. We accordingly reduce our estimate of petitioner's basis by that amount, for an estimated basis of $78,810. Petitioner offered into evidence, and we hereby admit, the June 11, 1991, settlement statement from

[11] Based on the record in this case, we find that the date of sale was June 11, 1991. See infra note 12.

the sale of the Crazy Horse property which lists expenses incurred by petitioner in connection with the sale totaling $4,015.[12] Petitioner is entitled to an offset for these expenses. Using the foregoing estimates, we find that petitioner's gain on the sale of the Crazy Horse property was $72,175 ($155,000 gross sales proceeds, less $4,015 expenses of sale, less $78,810 basis), and we sustain respondent's determination of gain from real estate only to that extent. Since the parties have stipulated that petitioner paid mortgage interest of $365 in relation to the Crazy Horse property, petitioner is entitled to a deduction in that amount.

For the reasons discussed earlier, we find that petitioner worked as the manager of Jiordano's in 1991. Other than his contention on brief that he "earned less than $600" in 1991, petitioner has not accounted for any income from Jiordano's. The settlement statement for the Crazy Horse property sale indicates that petitioner received cash proceeds from the sale of the Crazy Horse property of $13,851 on June 11, 1991. Thus, if petitioner is to be believed, he met his cost of living for the first half

---

[12] Respondent noted a hearsay objection to the document. Since the document is a settlement sheet and contains the sales price, property address, and year of sale to which the parties have stipulated for the sale of the Crazy Horse property, we find the document of sufficient trustworthiness that petitioner's retained copy is admissible. Cf. United States v. Ullrich, 580 F.2d 765 (5th Cir. 1978); United States v. Flom, 558 F.2d 1179 (5th Cir. 1977); United States v. Vacca, 431 F. Supp. 807 (E.D. Pa. 1977), affd. without published opinion 571 F.2d 573 (3d Cir. 1978).

of 1991 with less than $600, of which $365 was paid as mortgage interest on the Crazy Horse property. Even accepting petitioner's contention that he lived with his mother, we do not find his position credible. We conclude that petitioner has not offered a credible explanation of how he met his living expenses during the first half of 1991, although the $13,851 in cash proceeds from the Crazy Horse sale could account for his living expenses for the second half. We therefore find that respondent's determination of $33,631 in unreported income based on petitioner's cost of living for the year is erroneous to the extent that it fails to take into account the $13,851 in cash proceeds available to petitioner. We therefore sustain the determination only to the extent of $19,780 ($33,631 in determined unreported income less $13,851 in available cash proceeds).

1992

The parties have not stipulated that petitioner received any income or had any specific expenditures in 1992. For the reasons discussed earlier, we find that petitioner worked as the manager of Jiordano's in 1992. Petitioner admits that he delivered "a handful" of summonses for attorneys, for which he was compensated. For the reasons discussed earlier, we find that petitioner lived with his mother.

Other than his contention on brief that he "earned less than $600" in 1992, petitioner has not accounted for any income from

Jiordano's or his delivery of summonses, nor explained how he may have met his cost of living. Because petitioner has not offered a credible explanation of how he met his living expenses in 1992, he has failed to demonstrate error in respondent's determination that he had unreported income of $34,752 based on his cost of living, and we therefore sustain the determination.

1993

The parties have stipulated that petitioner received nonemployee compensation from Cantel Communications in the amount of $18,018.98 in 1993. Respondent also determined that petitioner received "unreported income" of $35,873 in that year. As previously discussed, because respondent presented no evidence that petitioner was engaged in any other income-producing activity besides working for Cantel Communications, the notice of deficiency is arbitrary and is not entitled to a presumption of correctness insofar as it determines such unreported income. In light of the fact that (i) petitioner admits receiving $18,018.98 of income, which could have met his cost of living; (ii) petitioner denies receiving any other income; (iii) respondent's determination of unreported income is not presumptively correct; and (iv) there is no other evidence of unreported income, we will not sustain respondent's determination of unreported income of $35,873 in 1993.

Additions to Tax

The addition to tax under section 6651(a) applies in the case of failure to file a tax return, unless the failure is due to reasonable cause. Petitioner failed to file returns for all the years in issue and has offered no evidence of reasonable cause. Thus, he is liable for the additions to tax under section 6651(a). The additions to tax are based on the amount required to be shown as tax on each return, which amount will be computed under Rule 155.

The additions to tax under section 6654(a) apply in the case of an underpayment of estimated tax. Petitioner failed to pay estimated tax during all the years in issue, and he has offered no evidence to show that he qualifies for one of the exceptions provided in section 6654(e). Thus, he is liable for the additions to tax under section 6654(a). The additions to tax are based on the amount of each underpayment, which amount will be computed under Rule 155.

To reflect the foregoing,

Decision will be entered

under Rule 155.
